TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-96-00558-CR






Martin Hernandez, Appellant



v.



The State of Texas, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 167TH JUDICIAL DISTRICT


NO. 95-0741, HONORABLE FRED A. MOORE, JUDGE PRESIDING







 Appellant, on his plea of "Not guilty," was tried before a jury on a two count indictment
charging him with having committed the offense of aggravated sexual assault of a child and with having
committed the offense of indecency with a child by contact. The jury found the appellant guilty of both
offenses and assessed his punishment at life imprisonment and a $10,000.00 fine on the aggravated sexual
assault count and 20 years' imprisonment and a $10,000.00 fine on the indecency with a child by contact
count; both terms to be served concurrently in the Institutional Division of the Texas Department of Criminal
Justice.

 Appellant proffers two points on appeal.

1. Appellant's statement was obtained in violation of articles 38.22 and 38.23 and was
therefore inadmissible;




2. The refusal of the trial court to appoint an interpreter to testify as to the competency
of the witness who translated appellant's statement and the Miranda warnings given
to him denied appellant the right of confrontation guaranteed to him by the 6th and
14th amendments to the United States Constitution and article I, section 10 of the
Texas Constitution. 



FACTS


 A brief statement of the evidence is necessary. An interpreter was sworn and utilized
throughout the trial. The complainant testified at trial that appellant removed complainant's clothes and got
on top of her at a time when he was wearing only a shirt and that he touched her on her front and back part. 
 Utilizing male and female dolls she positioned the dolls in such a way that the female doll was lying on its
back and the male doll was lying on top of the female doll. Pointing to the female and male genitalia on the
dolls, she testified that she felt the front part of the appellant go into her front part and that he touched her
with his front part on both her front and back parts and that this occurred in her mother's apartment on her
mother's bed. She further testified that subsequently he touched her front part with his front part a second
time in her mother's house. Both of these incidents occurred when she was in the first grade. The evidence
established that complainant told her grandmother of this after the first occurrence and subsequently told
a child protective services investigator that appellant had sexually abused her on the two separate
occasions. It was established that the child had syphilis and a syphilitic growth in her vaginal and rectal
areas, and that appellant also had syphilis. Shortly after the victim's outcry, a policeman from the Child
Abuse Unit of the Austin Police Department called appellant and asked to speak with him about the sexual
abuse allegations. Appellant agreed to talk with the officer and was transported by the officer to the police
station. At the police station, the officer read to appellant the Miranda rights in English from the standard
blue card. See Miranda v. Arizona, 384 U.S. 436 (1966). The appellant told the officer that he
understood his rights and agreed to give a statement to the police. 

 During the trial, but out of the presence of the jury, a Jackson v. Denno hearing was held. 
See Jackson v. Denno, 378 U.S. 368 (1964). The police officer who had given the Miranda warnings
to appellant testified that at no time did appellant indicate he did not understand English or that he would
be more comfortable speaking in Spanish. Appellant's written statement was given to the officer in
English. Following the typing of the statement, but before appellant signed it, the officer asked another
officer to read the statement to appellant in Spanish and in English, in order to guarantee that appellant
understood the statement. The officer who did this testified that she read to appellant his Miranda warnings
from the blue card in Spanish and that appellant initialed the warnings, signifying his desire to waive his
rights. The officer then read the statement to appellant in English and again in Spanish. In her opinion,
appellant understood everything that was read to him in English and in Spanish. According to her
testimony, appellant did not show any lack of understanding or tell her that he did not understand. The blue
card initialed by appellant was introduced in evidence showing his initials next to the Spanish version of the
warning. 

 Although the written statement given by appellant was to a great extent exculpatory, he did
state, "It is possible that if I had got real drunk, I could have got into bed and touched Crystal, thinking it
was Pauline, but I don't remember doing this."

 Appellant did not testify at the Jackson v. Denno hearing or before the jury during the
guilt-innocence phase of the trial.


POINT ONE


The trial court erred in admitting appellant's written statement to the police in evidence in
that such statement was not freely and voluntarily given as required by articles 38.22 and
38.23. Tex. Code Crim. Proc. Ann. arts. 38.22, 38.23 (West 1979 & Supp. 1998).



 Out of the presence of the jury during the Jackson v. Denno hearing, Officer Maria Lena
Hinojosa testified concerning her reading the warnings from the blue card both in English and in Spanish
to appellant, and reading his typewritten statement from English to Spanish and from Spanish to English.

 On cross-examination, counsel for appellant challenged Officer Hinojosa's competency
to translate appellant's statement from English to Spanish, emphasizing her lack of formal training in
Spanish. The officer testified that her translation was accurate enough to communicate to appellant the
significance of the Miranda warnings and the content of his statement; she also admitted she did not speak
Spanish fluently. (1) Appellant requested that the court interpreter evaluate the officer's ability to interpret. 
Because the court interpreter felt it would present a conflict of interest to act as a witness for the defense,
counsel requested that an independent interpreter be appointed to listen to the officer's Spanish and to
testify as an expert for him. The court denied this request noting that counsel's request was made in the
middle of the trial when it could have been made at pretrial. The State argued at the hearing that appellant
understood English, that Officer Hinojosa read the Miranda rights and statement to appellant in English and
Spanish and told the appellant to inform her if he did not understand or agree with anything she read, which
appellant did not do. The trial court ruled that the statement was made in compliance with article 38.22
and was freely and voluntarily given. The statement was admitted in evidence over appellant's objection
and subsequently read to the jury. (2)


 Other than the fact that appellant was born in Mexico and that English was not his primary
language, and assuming that the officer who read the blue card containing the Miranda warnings in Spanish
and English was not fluent in Spanish, nothing established that appellant did not understand the warnings
or his statement or did not voluntarily and knowingly waive the rights set out in the warnings.

 The testimony of the officers and the other witnesses was that appellant understood and
knowingly waived his rights and executed his statement. There is no evidence to the contrary in the record.

 Although not raised as an issue before us, the record is void of any written findings of fact
and conclusions of law filed by the trial judge as required by article 38.22, section 6. However, this is
understandable, there being no conflicting fact issue. In Trybule v. State, 737 S.W.2d 617, 621 (Tex.
App.--Austin 1987, pet. ref'd), we stated that before any fact finding as to voluntariness of a statement
is required, there must be some evidence that the statement was not voluntary. See Pete v. State, 471
S.W.2d 841 (Tex. Crim. App. 1971); Miller v. State, 666 S.W.2d 269 (Tex. App.--Dallas 1984, pet.
ref'd).

 Even if we were to conclude that appellant had properly raised a fact issue on voluntariness,
the error, if any, would be deemed waived given that the appellant testified at the punishment stage of the
trial to the same facts deemed inculpatory in the statement:


[Questions by defense counsel]

Q: Now, when you went to the police station, you gave the police a statement. Is that
correct?


A: Yes.


Q: Now, when you heard what was presented in evidence in this trial, what can you tell
the jury? What is your response?


A: My response is that what I told the sergeant is the same thing that I am going to tell the
jury.


Q: And what is that?


A: And when that happened, at the time that it happened, at that time I had -- was very
drunk, and I am not conscious of having done that. If I did do that, I made a mistake.
. .


[Questions by prosecutor]

Q: And you are not contesting the fact that you committed these sexual assaults against
Crystal Guerra, are you?


A: If I did it, it was a mistake and I did it when I was drunk and I don't remember.



See Harrington v. State, 547 S.W.2d 616, 620 (Tex. Crim. App. 1977); Richardson v. State, 458
S.W.2d 665 (Tex. Crim. App. 1970); Daugereau v. State, 778 S.W.2d 577 (Tex. App.--Corpus Christi
1989, no pet.).

 Appellant's point number one is overruled.


POINT TWO



The trial court erred in refusing to appoint an interpreter to provide testimony concerning
a witness's competency as to her translation of appellant's written statement from English
to Spanish, in violation of appellant's rights guaranteed by the 6th and 14th amendments
to the United States Constitution and by article I, section 10 of the Texas Constitution. 



 During the Jackson v. Denno hearing, the officer who translated appellant's written
statement from English to Spanish admitted that she was not "totally fluent" in Spanish. Appellant's counsel
at that time requested that the court appoint an interpreter so that he might use that interpreter as an expert
to show that the officer was not competent to translate appellant's statement into Spanish and to translate
the Miranda warnings on the blue card into Spanish and into English. The request was denied. 

 Arguing that the failure of the court to appoint an interpreter as appellant's expert deprived
him of his constitutional right to confront the witnesses against him, appellant cites two cases as authority
for his contention: Montoya v. State, 811 S.W.2d 671 (Tex. App.--Corpus Christi 1991, no pet.) and
Frescas v. State, 636 S.W.2d 516 (Tex. App.--El Paso 1982, no pet.).

 In Montoya, the trial court appointed a qualified interpreter, but a medical emergency arose
and the interpreter had to leave court. The trial judge, noting that the bailiff spoke Spanish, appointed the
bailiff as interpreter. The court of appeals in affirming the conviction asserted that after a motion for
appointment of an interpreter and a showing that a defendant does not speak English, an interpreter must
be provided to interpret the proceedings, citing article 38.30. Tex. Code Crim. Proc. Ann. art. 38.30
(West Supp. 1998). The only requirement is that the person interpreting possess adequate interpreting
skills, especially in the use of slang. This article protects the defendant's right to confrontation under the
state and federal constitutions. In Montoya, the appellate court found that the defendant waived his right
to complain of the alleged error because he did not object to the use of the bailiff as an interpreter, and he
did not direct the court to any part of the record where alleged errors in translation occurred which
prevented him from confronting the witnesses. Montoya, 811 S.W.2d at 673.

 In Frescas, defense counsel instructed the interpreter to stop translating during jury voir
dire, advising the court that the continuous translation from English into Spanish was distracting his attention
from the selection process. The trial court ruled that a sporadic interpretation was not feasible and that the
court's duty to the defendant, absent a waiver, was to provide a continuous translation. The court of
appeals, in overruling defendant's contention, found that although he presented an issue of potential harm,
he had not demonstrated any actual injury. Frescas, 636 S.W.2d at 518.

 While these cases support the proposition that article 38.30 requires that an interpreter be
appointed by the court when there is a showing that the defendant does not speak English, they do not
under the facts of this case constitute authority that would support appellant's contention.

 In its brief in answer to appellant's contention, the State submits that appellant's second
point of error presents a classic Ake v. Oklahoma problem. See Ake v. Oklahoma, 470 U.S. 68 (1985). 
That is, the trial court arguably erred by not appointing an expert witness to testify about the officer's
Spanish translation. In Ake, the defendant requested the appointment of a psychiatrist to assist on the issue
of his sanity at the time of the offense. The Supreme Court held that due process requires access to raw
material integral to the building of an effective defense. Id. at 77. The case specifically holds that a state
must provide the basic tools to present a defense within the adversarial system.

 In Rey v. State, 897 S.W.2d 333 (Tex. Crim. App. 1995), the Court of Criminal Appeals
ruled that Ake was not limited to psychiatric experts, and utilized the Ake analysis to determine whether
the trial court erred in not appointing an expert pathologist for the defendant. It was emphasized in Rey that
a threshold showing must be made by the defendant that the issue was "likely to be a significant factor" at
trial. Id. at 339. As declared in Rey and in Taylor v. State, 939 S.W.2d 148 (Tex. Crim. App. 1996),
the defendant must present evidence that he needed the assistance of an expert either to support a viable
defensive theory or to question the State's expert.

 As the State points out, appellant did not testify or present any witnesses on his behalf
concerning the accuracy of the police officer's translation of either his statement or the Miranda warnings. 
More importantly, appellant failed to put on any evidence showing a lack of voluntariness, or that appellant
did not understand the Miranda warnings or the contents of his statement. There was no evidence that the
officer's lack of fluency in Spanish caused appellant to execute his statement, given the fact that the officers
and civilian witnesses all testified that they felt that appellant understood his statement and understood the
warnings and voluntarily executed and signed the statement. Thus, there was no issue at trial for which an
expert witness was necessary.


 For the foregoing reasons, appellant's second point of error is overruled and the judgment
of the trial court is affirmed. 



 

 Frank J. Maloney, Justice

Before Chief Justice Carroll, Justices Jones and Maloney;* Chief Justice Carroll not participating

Affirmed

Filed: March 5, 1998

Publish
















* Before Frank. J. Maloney, Judge (former), Court of Criminal Appeals, sitting by assignment. See Tex.
Gov't Code Ann. § 74.003(b) (West 1988).

1. A: . . . . I will never claim totally fluent. There are words that I don't know. If I never used
the word, I might not know that word.

 Q: Were there words in this statement that you are unfamiliar with?

 A: There is one word that comes to mind, and it was the word "try." And the question then --
when I said it in English, he said that is tratar, and then I knew that word.

 Q: So you were unfamiliar with the word try?

 A: Right.
2. I have a girlfriend named Pauline Molina and we have been going together for
about 2 or 2 and a half years. About 4 months ago Pauline lived at 2306 Wilson #107. 
She lived there with her two kids Crystal and Christopher. Pauline's mother, Margaret,
and her boyfriend George Hernandez also lived there. I stayed there about two or three
nights out of the week.

 Pauline has told me that I am accused of molesting Crystal, this is not true. I have
spanked Crystal before but I have not touched her on panocha, "P-A-N-O-C-H-A," or
any of her other private areas.

 When I stayed at the apartment I slept with Pauline and Crystal slept on the floor
in the same bedroom. There was a TV in this bedroom. Margaret and George usually
slept downstairs but sometimes they slept upstairs.

 Sometime when I get real drunk I can't remember some of the things I do. It is
possible that if I had got real drunk, I could have got into bed and touched Crystal thinking
it was Pauline but I don't remember doing this.

 I don't drink very much but when I drink a lot I lose control of my anger. If I drink
too much I forget things that I do.

 If I did touch Crystal, I was just too drunk and I just fell asleep but I don't
remember it.


sses on his behalf
concerning the accuracy of the police officer's translation of either his statement or the Miranda warnings. 
More importantly, appellant failed to put on any evidence showing a lack of voluntariness, or that appellant
did not understand the Miranda warn