TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-02-00453-CR






Jose B. Lopez, Appellant


v.


The State of Texas, Appellee







FROM THE DISTRICT COURT OF HAYS COUNTY, 22ND JUDICIAL DISTRICT

NO. CR-00-527, HONORABLE CHARLES RAMSAY, JUDGE PRESIDING






M E M O R A N D U M O P I N I O N



 A jury convicted appellant Jose B. Lopez of two counts of aggravated sexual assault
of a child and sentenced him to twenty years' imprisonment. See Tex. Pen. Code Ann. § 22.021
(West 2003). He complains on appeal that (1) his interview with the police should have been
suppressed, (2) the evidence is legally and factually insufficient to support the verdict, and (3) the
trial court erred in admitting into evidence a videotape of appellant's police interview because the
tape was more prejudicial than probative. We affirm the conviction.

 In his first and second issues on appeal, appellant, whose first language is Spanish,
complains that his statement to the police should have been suppressed because he did not
understand English well enough to knowingly waive his rights, and thus the statement was not made
voluntarily, in violation of the Fifth Amendment of the United States Constitution and articles 38.22
and 38.23 of the code of criminal procedure. See U.S. Const. art. V; Tex. Code Crim. Proc. Ann.
arts. 38.22, 38.23 (West 1979 & Supp. 2003); Miranda v. Arizona, 384 U.S. 436, 469-71 (1966). 

 At a hearing on appellant's motion to suppress, see Jackson v. Denno, 378 U.S. 368,
394 (1964), Hays County Detective Jeri Skrocki testified that she questioned appellant after his
arrest. The interrogation, which was conducted in English, was videotaped, and before she began
questioning appellant she advised him of his constitutional rights. Skrocki testified that appellant
speaks English. She did not recall and the tape does not indicate that at the beginning of the
interview appellant asked if Skrocki spoke Spanish or requested an interpreter. After Skrocki
explained appellant's rights to him, she asked if he understood and he paused and then nodded his
head affirmatively. She prompted him to say "yes" verbally, and he did so. Skrocki next had
appellant read a written waiver of his rights and sign his initials to the form. Skrocki testified and
the tape shows that appellant told her he could read English. He read through the waiver form and
asked Skrocki about his right to an attorney; he said he could not afford to hire an attorney, and
Skrocki explained that he could request one. Appellant did not ask to speak to an attorney until he
had answered questions for almost twenty minutes. He then asked if it was possible for him to speak
to an attorney, and Skrocki terminated the interview. During the interview, appellant appeared to
understand Skrocki's questions and answered her appropriately. Appellant indicated on a few
occasions that he did not understand and Skrocki restated the questions so that he could understand. 
Likewise, Skrocki said that when she did not understand appellant, who has a thick accent, she
restated what he had said to be sure she understood him correctly. Appellant sometimes hesitated
before answering Skrocki's questions; she said she thought "he was in a very difficult situation and
he was very reluctant to talk."

 Appellant testified at the hearing and at trial through an interpreter. Very early in his
hearing testimony, the trial court admonished appellant "to wait until he hears the question in
Spanish. Don't answer." The interpreter responded, "I think he's answering because he
understands," and the court said, "I know. I know but he needs to wait." Appellant testified that his
English was limited and that he understood somewhere between twenty-five and forty percent of
what he hears. He said he understood less when he was questioned by Skrocki about eight months
earlier and since that interview he had dedicated himself to learning English. However, appellant
also said he would not be surprised if his family members, who had not seen him since before his
interview with Skrocki, said he understood English. Appellant testified that he did not understand
everything Skrocki said during the interview, that he asked Skrocki if she spoke Spanish, and that
she was unable to locate a Spanish speaker for the interview. Appellant said he hesitated to answer
some of Skrocki's questions because he did not understand them and he did not understand that he
had a right to have an attorney present or to refuse to speak to Skrocki. He indicated he did
understand because, "It was a matter of being cooperative. But without understand totally--without
totally understanding." Appellant also testified that he did not entirely understand the waiver form
he signed. Appellant said he was familiar with Mexico's legal system, not the United States's
system; however, appellant admitted that he was arrested in Texas in 1998 and was placed on
probation in Pennsylvania shortly before he was arrested for these charges. He did not remember
whether he was read his rights in connection with those earlier proceedings. At the end of her cross-examination of appellant, the prosecutor said, "I want the record to reflect that I'm asking my
questions in English . . . . And he's answering prior to the interpreter even being able to interpret
it." The trial court overruled appellant's motion to suppress.

 In a suppression hearing, the trial court is the sole trier of fact, the credibility of the
witnesses, and the weight to be given their testimony. Romero v. State, 800 S.W.2d 539, 543 (Tex.
Crim. App. 1990); Zuliani v. State, 903 S.W.2d 812, 819 (Tex. App.--Austin 1995, pet. ref'd). The
trial court may accept or reject all or any part of a witness's testimony. Cantu v. State, 817 S.W.2d
74, 77 (Tex. Crim. App. 1991); Zuliani, 903 S.W.2d at 819. In reviewing the trial court's decision,
we may not engage in our own factual review; we determine only whether the record supports the
trial court's fact findings. Romero, 800 S.W.2d at 543; Zuliani, 903 S.W.2d at 819. If the trial
court's findings are supported by the record, we may not disturb the findings absent an abuse of
discretion. Zuliani, 903 S.W.2d at 819.

 It was for the trial court to view the videotaped interview, hear Skrocki's and
appellant's testimony, determine their credibility and the weight to be given their testimony, and
resolve conflicts between their testimony. At the hearing, appellant apparently understood much of
what was being said without the need for the interpreter. Skrocki testified that during the interview
appellant seemed to understand what she said and she restated her questions when he indicated he
did not. She testified that he seemed to read the waiver form and discussed with her that he could
not afford an attorney upon reading that admonishment. It was the trial court's prerogative, as fact-finder, to discount appellant's protestations that he understood English much better at trial than he
had during the interview eight months earlier. We will not second-guess the trial court's
determination that appellant understood his rights and knowingly and voluntarily gave his statement
to Skrocki. Zuliani, 903 S.W.2d at 819; see Hernandez v. State, 978 S.W.2d 137, 139-40 (Tex.
App.--Austin 1998, pet. ref'd). We overrule appellant's first two issues on appeal. 

 In his second and third issues on appeal, appellant contends the evidence was legally
and factually insufficient to support the jury's verdicts. He largely relies on inconsistencies between
the victim's trial testimony and her earlier statements to relatives, caregivers, and the police.

 In reviewing the evidence for legal sufficiency, we view the evidence in the light most
favorable to the verdict and determine whether any rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt. Johnson v. State, 23 S.W.3d 1, 7 (Tex.
Crim. App. 2000). In determining the factual sufficiency of the evidence, we view all of the
evidence in a neutral light and will set aside a verdict only if it is so contrary to the overwhelming
weight of the evidence as to be clearly wrong and unjust. Id. at 6-7; Clewis v. State, 922 S.W.2d
126, 129 (Tex. Crim. App. 1996). We must be appropriately deferential to the jury's judgment and
should not substantially intrude upon the jury's role as the sole judge of the weight and credibility
given to witness testimony. Johnson, 23 S.W.3d at 7.

 T.G. testified that appellant, her stepfather, raped her the first time in late February
2000, when she was thirteen years' old. Before the assault, T.G. did not like appellant, but she
"didn't have nothing against him" and he seemed to make her mother happy. Shortly before the
assaults, however, appellant had begun drinking heavily and "we noticed a big difference in him." 
She testified that on the day of the first assault, she came home from school and, as she usually did,
locked herself in her room to talk to her boyfriend, J.R., on the phone; everyone in the house knew
the lock was easy to open with a butter knife. As she was on the phone, she heard the door rattle. 
T.G. testified that appellant opened the door and then, "He got me on the bed. Hung up the phone." 
Appellant then undressed T.G. and raped her. After the assault, appellant told T.G. not to tell anyone
or he would hurt her and her family. T.G. said she was confused and scared and she laid there
"thinking why did it have to happen to me." She then called J.R. and told him what had happened. 
J.R. wanted to tell his parents, but she made him promise that he would not tell anyone.

 About three weeks after the first assault, on a night when her mother was at work and
everyone else in the house was asleep, T.G. heard appellant repeatedly try to open her door. After
the third or fourth time, T.G. called her mother, Lydia, and said that appellant was trying to get into
her room. Lydia told T.G. to let her speak to appellant, then told T.G. to stay with her grandmother
until Lydia got home. Before she could go to her grandmother's room, appellant took her back into
her room and threw her on the bed. He shut the door and then raped her again. T.G. said she did not
cry out because she was scared of him. After the assault, she went into her grandmother's room and
said she wanted to go live with her grandmother, but she did not tell her that she had just been raped. 
About two months after the second assault, T.G. told her aunt about the assaults because she was
afraid she was pregnant. She asked her aunt not to tell anyone, but her aunt said she had to. T.G.
said that appellant understands English even though he does not speak it well.

 The trial took place about two years after the assaults occurred. There were some
inconsistencies between T.G.'s trial testimony and answers she gave to some of the other witnesses
and in a videotaped interview. For instance, T.G. testified at trial that she was on the phone when
the first assault happened but initially said she was getting ready for bed or was already asleep when
the assault occurred; T.G. told witnesses that she saw "white, gooey stuff" on her but at trial initially
denied that she saw any semen; T.G. told witnesses that she tried to push appellant off of her, but
at trial she did not so testify until cross-examination; T.G. at one point said appellant was wearing
shorts and then later said he was wearing pants; and there was some inconsistency between whether
T.G. stayed in her room for a while after the first assault or ran immediately into the bathroom. T.G.
stated that some of her answers might have been "a little bit different" from her trial testimony and
tried to explain some of the differences. T.G. explained that she did not see any "white, sticky,
gooey stuff" while she was in her room but did see it later when she went to the bathroom, and said
she did not know what appellant was wearing except that it had buttons. T.G. still felt she was
somewhat at fault for the assaults and feared her family would think badly of her.

 J.R. testified that while he was talking to T.G. on the phone one evening, she sounded
scared and said appellant was opening her door; someone then hung up the phone. A short time
later, T.G. called him back crying and said appellant had raped her. J.R. did not tell anyone because,
"I didn't feel right," and T.G. told him not to.

 T.G.'s grandmother Ofelia testified that one night, T.G. came to her room crying. 
Ofelia asked what was wrong, but T.G. would not tell her. Ofelia could not remember what time of
year this occurred. While Ofelia was trying to find out why T.G. was upset, appellant "went into my
room. He knocked. And he tried to open the door and I tried to shut it. And he opened it and he
said, Remember what I told you, [T.G.], you know."

 T.G.'s mother Lydia testified that T.G. called her at work one night and said appellant
was trying to get into her room. Lydia asked if appellant was drunk, and T.G. said he was. Lydia
told T.G. to sleep with her grandmother and talked to appellant on the phone. Lydia asked why
appellant was trying to get into T.G.'s room, and appellant said he wanted to use the phone even
though there were other phones in the house. Lydia left for home as soon as she could, and when
she got there, T.G. was in Ofelia's room crying. Lydia asked if appellant "had done anything to her
and she kept saying no." Lydia said appellant understands English better than he speaks it.

 Skrocki testified that as she questioned appellant, he became emotional and began
to tear up. Appellant never admitted to having sex with T.G. Skrocki said, "He stated that it didn't
happen at one point. Well, actually several points during the interview. Another point, he told me
that if it did happen he didn't remember it happening" because he was intoxicated.

 Appellant testified that nothing out of the ordinary happened in the time frame of the
first assault and that on the night of the second assault he only wanted to use the phone. He said he
did not go into T.G.'s room, but knocked on her door four or five times to ask for the phone. 
Eventually T.G. "screamed real loud from inside her room for me to leave," and appellant went back
to his room to watch television. Appellant denied raping T.G. and said he did not understand some
of Skrocki's questions during the interview. He explained that when he told Skrocki that he did not
remember having assaulted T.G. it was because it had not happened. He denied that he might have
assaulted her while too intoxicated to remember.

 The evidence is clearly legally sufficient. Viewed in the light most favorable to the
jury's guilty verdicts, T.G.'s testimony alone gave ample support for the jury to find the essential
elements of the crime beyond a reasonable doubt. See Johnson, 23 S.W.3d at 7. As for the factual
sufficiency, even when viewed in a neutral light and weighed against the evidence in appellant's
favor, we hold the evidence is clearly sufficient. See id. at 6-7. Appellant denied assaulting T.G.,
and appellant's attorney thoroughly explored inconsistencies in T.G.'s descriptions of the assaults. 
However, J.R., Lydia, and Ofelia all gave testimony that tended to support T.G.'s story, and it was
for the jury alone to evaluate the witnesses' credibility. See id. at 7. That the jury resolved the
conflicting stories in T.G.'s favor does not render the verdict clearly wrong and unjust. See id. We
overrule appellant's third and fourth issues on appeal.

 In his fifth issue, appellant contends that the trial court erred in admitting into
evidence the videotape of his interview with Skrocki, during which he said, "If something happened,
I'm sorry." He contends that the videotape was so prejudicial that it substantially outweighed any
probative value it might have had.

 Relevant evidence may be excluded if the trial court determines that its probative
value is substantially outweighed by the danger of unfair prejudice. Tex. R. Evid. 403; Santellan v.
State, 939 S.W.2d 155, 169 (Tex. Crim. App. 1997). There is a presumption that relevant evidence
is more probative than prejudicial, and we will reverse a trial court's balancing under rule 403 only
if we find a clear abuse of discretion. Santellan, 939 S.W.2d at 169.

 We have already held that the trial court did not err in finding that appellant's
statement was made voluntarily. Appellant's statement, in which he largely denied committing the
assaults, was clearly probative on the issue of his guilt. The tape was played for the jury over
appellant's objection, but after the tape finished, Skrocki testified without objection that appellant
never admitted to having sex with T.G., several times denied that it had happened, and then said that
"if it did happen he didn't remember" because he was intoxicated. On cross-examination, Skrocki
was asked whether appellant denied the allegations "throughout the entire interview," and she
answered, "Through most of the interview, yes, ma'am, that is true." The State asked appellant
without objection, "You told Detective Skrocki that if I did that, then I'm sorry," to which he
responded, "Yes." Appellant then explained, "I meant to say if something happened like the
discussion over the phone, I don't know, but I'm sorry." The State asked, "You told Detective
Skrocki that you were drunk and you didn't remember what happened. Is that not correct?" and,
"Detective Skrocki asked you whether or not you had sex with [T.G.] and you said, I don't know. 
Isn't that correct?" To both questions, appellant answered, "Yes." The State asked about appellant's
statement that "if I was drunk, well, it's possible that I did that," and appellant responded, "I meant
to say something could happen--it can happen with a person who is drunk." Appellant went on to
explain that it had not happened and that he was sure he had not assaulted T.G. On redirect,
appellant was able to again explain that he used the phrase, "I don't remember" to mean that it did
not happen and that he uses that phrase in such a way often.

 We first hold that appellant has not shown that the tape, in which appellant largely
denied the charges and then made an ambiguous statement that he was sorry if anything had
happened, in view of the rest of the evidence, was so unfairly prejudicial as to substantially outweigh
its probative value. Furthermore, during his and Skrocki's testimony, they both testified as to the
statement several times; appellant made no objection to those questions and answers, and appellant
attempted to explain that he did not clearly understand the question and that he was in fact denying
the allegations when he stated that he did not remember it happening. "The admission of the same
evidence from another source, without objection, waives previously stated objections." Moore v.
State, 999 S.W.2d 385, 402 (Tex. Crim. App. 1999). Appellant has not shown that the trial court
clearly abused its discretion in admitting the tape into evidence. We overrule appellant's fifth issue
on appeal and affirm the trial court's judgment of conviction.



 ___________________________________________

 Jan P. Patterson, Justice

Before Justices Kidd, Yeakel and Patterson

Affirmed

Filed: April 24, 2003

Do Not Publish