# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-02-00453-CR

---

**Jose B. Lopez, Appellant**

**v.**

**The State of Texas, Appellee**

---

**FROM THE DISTRICT COURT OF HAYS COUNTY, 22ND JUDICIAL DISTRICT
NO. CR-00-527, HONORABLE CHARLES RAMSAY, JUDGE PRESIDING**

---

### M E M O R A N D U M   O P I N I O N

A jury convicted appellant Jose B. Lopez of two counts of aggravated sexual assault of a child and sentenced him to twenty years= imprisonment. *See* Tex. Pen. Code Ann. ' 22.021 (West 2003). He complains on appeal that (1) his interview with the police should have been suppressed, (2) the evidence is legally and factually insufficient to support the verdict, and (3) the trial court erred in admitting into evidence a videotape of appellant=s police interview because the tape was more prejudicial than probative. We affirm the conviction.

In his first and second issues on appeal, appellant, whose first language is Spanish, complains that his statement to the police should have been suppressed because he did not understand English well enough to knowingly waive his rights, and thus the statement was not made voluntarily, in

violation of the Fifth Amendment of the United States Constitution and articles 38.22 and 38.23 of the code of criminal procedure. *See* U.S. Const. art. V; Tex. Code Crim. Proc. Ann. arts. 38.22, 38.23 (West 1979 & Supp. 2003); *Miranda v. Arizona*, 384 U.S. 436, 469-71 (1966).

At a hearing on appellant=s motion to suppress, *see Jackson v. Denno*, 378 U.S. 368, 394 (1964), Hays County Detective Jeri Skrocki testified that she questioned appellant after his arrest. The interrogation, which was conducted in English, was videotaped, and before she began questioning appellant she advised him of his constitutional rights. Skrocki testified that appellant speaks English. She did not recall and the tape does not indicate that at the beginning of the interview appellant asked if Skrocki spoke Spanish or requested an interpreter. After Skrocki explained appellant=s rights to him, she asked if he understood and he paused and then nodded his head affirmatively. She prompted him to say Ayes@ verbally, and he did so. Skrocki next had appellant read a written waiver of his rights and sign his initials to the form. Skrocki testified and the tape shows that appellant told her he could read English. He read through the waiver form and asked Skrocki about his right to an attorney; he said he could not afford to hire an attorney, and Skrocki explained that he could request one. Appellant did not ask to speak to an attorney until he had answered questions for almost twenty minutes. He then asked if it was possible for him to speak to an attorney, and Skrocki terminated the interview. During the interview, appellant appeared to understand Skrocki=s questions and answered her appropriately. Appellant indicated on a few occasions that he did not understand and Skrocki restated the questions so that he could understand. Likewise, Skrocki said that when she did not understand appellant, who has a thick accent, she restated what he had

2

said to be sure she understood him correctly.  Appellant sometimes hesitated before answering Skrocki=s questions; she said she thought Ahe was in a very difficult situation and he was very reluctant to talk.@

Appellant testified at the hearing and at trial through an interpreter.  Very early in his hearing testimony, the trial court admonished appellant Ato wait until he hears the question in Spanish.  Don=t answer.@  The interpreter responded, AI think he=s answering because he understands,@ and the court said, AI know.  I know but he needs to wait.@  Appellant testified that his English was limited and that he understood somewhere between twenty-five and forty percent of what he hears.  He said he understood less when he was questioned by Skrocki about eight months earlier and since that interview he had dedicated himself to learning English.  However, appellant also said he would not be surprised if his family members, who had not seen him since before his interview with Skrocki, said he understood English.  Appellant testified that he did not understand everything Skrocki said during the interview, that he asked Skrocki if she spoke Spanish, and that she was unable to locate a Spanish speaker for the interview.  Appellant said he hesitated to answer some of Skrocki=s questions because he did not understand them and he did not understand that he had a right to have an attorney present or to refuse to speak to Skrocki.  He indicated he did understand because, AIt was a matter of being cooperative.  But without understand totallyC without totally understanding.@  Appellant also testified that he did not entirely understand the waiver form he signed.  Appellant said he was familiar with Mexico=s legal system, not the United States=s system; however, appellant admitted that he was arrested in Texas in 1998 and was placed on probation in Pennsylvania shortly before he was arrested for these charges.  He did not remember whether he was read his rights in connection with those earlier proceedings.  At the end of her cross-examination of appellant, the

3

prosecutor said, AI want the record to reflect that I=m asking my questions in English . . . . And he=s answering prior to the interpreter even being able to interpret it.@ The trial court overruled appellant=s motion to suppress.

In a suppression hearing, the trial court is the sole trier of fact, the credibility of the witnesses, and the weight to be given their testimony. *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); *Zuliani v. State*, 903 S.W.2d 812, 819 (Tex. App.CAustin 1995, pet. ref=d). The trial court may accept or reject all or any part of a witness=s testimony. *Cantu v. State*, 817 S.W.2d 74, 77 (Tex. Crim. App. 1991); *Zuliani*, 903 S.W.2d at 819. In reviewing the trial court=s decision, we may not engage in our own factual review; we determine only whether the record supports the trial court=s fact findings. *Romero*, 800 S.W.2d at 543; *Zuliani*, 903 S.W.2d at 819. If the trial court=s findings are supported by the record, we may not disturb the findings absent an abuse of discretion. *Zuliani*, 903 S.W.2d at 819.

It was for the trial court to view the videotaped interview, hear Skrocki=s and appellant=s testimony, determine their credibility and the weight to be given their testimony, and resolve conflicts between their testimony. At the hearing, appellant apparently understood much of what was being said without the need for the interpreter. Skrocki testified that during the interview appellant seemed to understand what she said and she restated her questions when he indicated he did not. She testified that he seemed to read the waiver form and discussed with her that he could not afford an attorney upon reading that admonishment. It was the trial court=s prerogative, as fact-finder, to discount appellant=s protestations that he understood English much better at trial than he had during the interview eight months earlier. We will not second-guess the trial court=s determination that appellant understood his rights and knowingly and

4

voluntarily gave his statement to Skrocki. *Zuliani*, 903 S.W.2d at 819; *see Hernandez v. State*, 978 S.W.2d 137, 139-40 (Tex. App.CAustin 1998, pet. ref=d). We overrule appellant=s first two issues on appeal.

In his second and third issues on appeal, appellant contends the evidence was legally and factually insufficient to support the jury=s verdicts. He largely relies on inconsistencies between the victim=s trial testimony and her earlier statements to relatives, caregivers, and the police.

In reviewing the evidence for legal sufficiency, we view the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Johnson v. State*, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000). In determining the factual sufficiency of the evidence, we view all of the evidence in a neutral light and will set aside a verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Id.* at 6-7; *Clewis v. State*, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996). We must be appropriately deferential to the jury=s judgment and should not substantially intrude upon the jury=s role as the sole judge of the weight and credibility given to witness testimony. *Johnson*, 23 S.W.3d at 7.

T.G. testified that appellant, her stepfather, raped her the first time in late February 2000, when she was thirteen years= old. Before the assault, T.G. did not like appellant, but she Adidn=t have nothing against him@ and he seemed to make her mother happy. Shortly before the assaults, however, appellant had begun drinking heavily and Awe noticed a big difference in him.@ She testified that on the day of the first assault, she came home from school and, as she usually did, locked herself in her room to talk to her boyfriend, J.R., on the phone; everyone in the house knew the lock was easy to open with a butter

5

knife.  As she was on the phone, she heard the door rattle.  T.G. testified that appellant opened the door and then, AHe got me on the bed.  Hung up the phone.@  Appellant then undressed T.G. and raped her.  After the assault, appellant told T.G. not to tell anyone or he would hurt her and her family.  T.G. said she was confused and scared and she laid there Athinking why did it have to happen to me.@  She then called J.R. and told him what had happened.  J.R. wanted to tell his parents, but she made him promise that he would not tell anyone.

About three weeks after the first assault, on a night when her mother was at work and everyone else in the house was asleep, T.G. heard appellant repeatedly try to open her door.  After the third or fourth time, T.G. called her mother, Lydia, and said that appellant was trying to get into her room.  Lydia told T.G. to let her speak to appellant, then told T.G. to stay with her grandmother until Lydia got home.  Before she could go to her grandmother=s room, appellant took her back into her room and threw her on the bed.  He shut the door and then raped her again.  T.G. said she did not cry out because she was scared of him.  After the assault, she went into her grandmother=s room and said she wanted to go live with her grandmother, but she did not tell her that she had just been raped.  About two months after the second assault, T.G. told her aunt about the assaults because she was afraid she was pregnant.  She asked her aunt not to tell anyone, but her aunt said she had to.  T.G. said that appellant understands English even though he does not speak it well.

The trial took place about two years after the assaults occurred.  There were some inconsistencies between T.G.=s trial testimony and answers she gave to some of the other witnesses and in a videotaped interview.  For instance, T.G. testified at trial that she was on the phone when the first assault

6

happened but initially said she was getting ready for bed or was already asleep when the assault occurred; T.G. told witnesses that she saw Awhite, gooey stuff@ on her but at trial initially denied that she saw any semen; T.G. told witnesses that she tried to push appellant off of her, but at trial she did not so testify until cross-examination; T.G. at one point said appellant was wearing shorts and then later said he was wearing pants; and there was some inconsistency between whether T.G. stayed in her room for a while after the first assault or ran immediately into the bathroom. T.G. stated that some of her answers might have been Aa little bit different@ from her trial testimony and tried to explain some of the differences. T.G. explained that she did not see any Awhite, sticky, gooey stuff@ while she was in her room but did see it later when she went to the bathroom, and said she did not know what appellant was wearing except that it had buttons. T.G. still felt she was somewhat at fault for the assaults and feared her family would think badly of her.

J.R. testified that while he was talking to T.G. on the phone one evening, she sounded scared and said appellant was opening her door; someone then hung up the phone. A short time later, T.G. called him back crying and said appellant had raped her. J.R. did not tell anyone because, AI didn=t feel right,@ and T.G. told him not to.

T.G.=s grandmother Ofelia testified that one night, T.G. came to her room crying. Ofelia asked what was wrong, but T.G. would not tell her. Ofelia could not remember what time of year this occurred. While Ofelia was trying to find out why T.G. was upset, appellant Awent into my room. He knocked. And he tried to open the door and I tried to shut it. And he opened it and he said, Remember what I told you, [T.G.], you know.@

7

T.G.=s mother Lydia testified that T.G. called her at work one night and said appellant was trying to get into her room. Lydia asked if appellant was drunk, and T.G. said he was. Lydia told T.G. to sleep with her grandmother and talked to appellant on the phone. Lydia asked why appellant was trying to get into T.G.=s room, and appellant said he wanted to use the phone even though there were other phones in the house. Lydia left for home as soon as she could, and when she got there, T.G. was in Ofelia=s room crying. Lydia asked if appellant Ahad done anything to her and she kept saying no.@ Lydia said appellant understands English better than he speaks it.

Skrocki testified that as she questioned appellant, he became emotional and began to tear up. Appellant never admitted to having sex with T.G. Skrocki said, AHe stated that it didn=t happen at one point. Well, actually several points during the interview. Another point, he told me that if it did happen he didn=t remember it happening@ because he was intoxicated.

Appellant testified that nothing out of the ordinary happened in the time frame of the first assault and that on the night of the second assault he only wanted to use the phone. He said he did not go into T.G.=s room, but knocked on her door four or five times to ask for the phone. Eventually T.G. Ascreamed real loud from inside her room for me to leave,@ and appellant went back to his room to watch television. Appellant denied raping T.G. and said he did not understand some of Skrocki=s questions during the interview. He explained that when he told Skrocki that he did not remember having assaulted T.G. it was because it had not happened. He denied that he might have assaulted her while too intoxicated to remember.

The evidence is clearly legally sufficient. Viewed in the light most favorable to the jury=s guilty verdicts, T.G.=s testimony alone gave ample support for the jury to find the essential elements of the crime beyond a reasonable doubt. *See Johnson*, 23 S.W.3d at 7. As for the factual sufficiency, even when viewed in a neutral light and weighed against the evidence in appellant=s favor, we hold the evidence is clearly sufficient. *See id.* at 6-7. Appellant denied assaulting T.G., and appellant=s attorney thoroughly explored inconsistencies in T.G.=s descriptions of the assaults. However, J.R., Lydia, and Ofelia all gave testimony that tended to support T.G.=s story, and it was for the jury alone to evaluate the witnesses= credibility. *See id.* at 7. That the jury resolved the conflicting stories in T.G.=s favor does not render the verdict clearly wrong and unjust. *See id.* We overrule appellant=s third and fourth issues on appeal.

In his fifth issue, appellant contends that the trial court erred in admitting into evidence the videotape of his interview with Skrocki, during which he said, AIf something happened, I=m sorry.@ He contends that the videotape was so prejudicial that it substantially outweighed any probative value it might have had.

Relevant evidence may be excluded if the trial court determines that its probative value is substantially outweighed by the danger of unfair prejudice. Tex. R. Evid. 403; *Santellan v. State*, 939 S.W.2d 155, 169 (Tex. Crim. App. 1997). There is a presumption that relevant evidence is more probative than prejudicial, and we will reverse a trial court=s balancing under rule 403 only if we find a clear abuse of discretion. *Santellan*, 939 S.W.2d at 169.

We have already held that the trial court did not err in finding that appellant=s statement was made voluntarily. Appellant=s statement, in which he largely denied committing the assaults, was clearly

9

probative on the issue of his guilt. The tape was played for the jury over appellant=s objection, but after the tape finished, Skrocki testified without objection that appellant never admitted to having sex with T.G., several times denied that it had happened, and then said that Aif it did happen he didn=t remember@ because he was intoxicated. On cross-examination, Skrocki was asked whether appellant denied the allegations Athroughout the entire interview,@ and she answered, AThrough most of the interview, yes, ma=am, that is true.@ The State asked appellant without objection, AYou told Detective Skrocki that if I did that, then I=m sorry,@ to which he responded, AYes.@ Appellant then explained, AI meant to say if something happened like the discussion over the phone, I don=t know, but I=m sorry.@ The State asked, AYou told Detective Skrocki that you were drunk and you didn=t remember what happened. Is that not correct?@ and, ADetective Skrocki asked you whether or not you had sex with [T.G.] and you said, I don=t know. Isn=t that correct?@ To both questions, appellant answered, AYes.@ The State asked about appellant=s statement that Aif I was drunk, well, it=s possible that I did that,@ and appellant responded, AI meant to say something could happenCit can happen with a person who is drunk.@ Appellant went on to explain that it had not happened and that he was sure he had not assaulted T.G. On redirect, appellant was able to again explain that he used the phrase, AI don=t remember@ to mean that it did not happen and that he uses that phrase in such a way often.

We first hold that appellant has not shown that the tape, in which appellant largely denied the charges and then made an ambiguous statement that he was sorry if anything had happened, in view of the rest of the evidence, was so unfairly prejudicial as to substantially outweigh its probative value. Furthermore, during his and Skrocki=s testimony, they both testified as to the statement several times;

10

appellant made no objection to those questions and answers, and appellant attempted to explain that he did not clearly understand the question and that he was in fact denying the allegations when he stated that he did not remember it happening. AThe admission of the same evidence from another source, without objection, waives previously stated objections.@ *Moore v. State*, 999 S.W.2d 385, 402 (Tex. Crim. App. 1999). Appellant has not shown that the trial court clearly abused its discretion in admitting the tape into evidence. We overrule appellant=s fifth issue on appeal and affirm the trial court=s judgment of conviction.

_____

Jan P. Patterson, Justice

Before Justices Kidd, Yeakel and Patterson

Affirmed

Filed:   April 24, 2003

Do Not Publish