NO. 07-03-0186-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL E

DECEMBER 1, 2004

_____

NICOLAS MOLINA,

Appellant

v.

THE STATE OF TEXAS,

Appellee

_____

FROM THE 47TH DISTRICT COURT OF POTTER COUNTY;

NO. 44,484-A; HON. HAL MINER, PRESIDING

_____

Before JOHNSON, C.J., QUINN, J. and BOYD, S.J.[1]

Appellant Nicolas Molina was convicted of murder and sentenced to life imprisonment. In five issues, he challenges that conviction by contending the trial court erred 1) in failing to grant his motion to suppress because he was interrogated while in custody without being given his *Miranda* warnings, 2) in failing to grant his motion to

_____

[1]John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment. Tex. Gov't Code Ann. §75.002(a)(1) (Vernon Supp. 2004).

suppress because his statement was given to police in Spanish but written by the police in English and there was no evidence he could read or write either language, 3) in defining an indictment to the venire panel, 4) in admonishing him not to testify at trial, and 5) in failing to "hold the State accountable to the standard of jury challenges set out in *Batson v. Kentucky.*" We affirm the judgment of the trial court.

## *Background*

Appellant and the victim Martin Marentes lived in adjoining rooms at the Inn of Amarillo in Amarillo, Texas. They also worked together with Martin having gotten appellant a job. Although the two men were ostensibly friends, they argued on several occasions about appellant's girlfriend whom appellant apparently believed was involved with Martin in some way. The night before the homicide, the two had argued at Olga's Bar at the Inn of Amarillo. The next day, Martin was found in his room by a maid lying in a pool of blood. He had been beaten to death with a hammer. Appellant did not show up for work that day and was later arrested for the offense. When he was brought to the police station, he confessed to the murder.

## *Issues One and Two - Motion to Suppress*

In his first two issues, appellant contests the trial court's failure to grant his motion to suppress. In doing so, he complains that he was not advised of his *Miranda*[2] rights prior to custodial interrogation and the statement he gave should have been suppressed since he made it orally in Spanish but it was written by the police officer in English. We overrule the issues.

---

[2]*Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

*Custodial Interrogation*

We review the trial court's ruling on a motion to suppress under the standard announced in *Guzman v. State,* 955 S.W.2d 85 (Tex. Crim. App. 1997). Thus, we give almost total deference to the trial court's findings of historical fact and review *de novo* its application of the law to the facts. *Id.* at 89.

Appellant complains that the statement he gave to police while he was being interrogated after his arrest should be suppressed because he was not given his *Miranda* warnings prior to giving the statement and the interview was not taped. The right against self-incrimination is protected on the federal level by the admonishments required pursuant to *Miranda v. Arizona* and on the state level by article 38.22 of the Texas Code of Criminal Procedure. No written statement made by an accused as a result of custodial interrogation is admissible against him unless it shows on the face of the statement that the accused received the specified statutory warnings, and no oral statement made during custodial interrogation is admissible unless the accused receives the statutory warnings and an electronic recording is made of the statement. Tex. Code Crim. Proc. Ann. art. 38.22 § 2 and § 3(a)(1) and (2) (Vernon 1979 and Vernon Supp. 2004-05). If the statement did not stem from custodial interrogation, neither *Miranda* nor article 38.22 require suppression. *Camarillo v. State,* 82 S.W.3d 529, 535 (Tex. App.--Austin 2002, no pet.); *Burruss v. State,* 20 S.W.3d 179, 183 (Tex. App.--Texarkana 2000, pet. ref'd).[3]

---

[3] Appellant does not separately address his complaint that the Texas Constitution was violated, and we will therefore not address it. *Johnson v. State,* 853 S.W.2d 527, 533 (Tex. Crim. App. 1992), *cert. denied,* 510 U.S. 852, 114 S.Ct. 154, 126 L.Ed.2d 115 (1993).

It is undisputed that appellant was in custody. However, the parties contest whether he was being interrogated at the time he orally confessed to the murder. Custodial interrogation occurs when a defendant is in custody and exposed "to any words or actions on the part of police . . . that [the police] should know are reasonably likely to elicit an incriminating response." *Roquemore v. State,* 60 S.W.3d 862, 868 (Tex. Crim. App. 2001), *quoting Rhode Island v. Innis,* 446 U.S. 291, 300-01, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980).

In this instance, Officer Daniel Montano testified that he was called to the police station after appellant's arrest because he spoke Spanish and was needed to converse with appellant who did not speak English. Montano had no previous involvement with the case. Appellant was escorted into an interrogation room, and he and Montano were alone. Montano asked appellant if "he knew why he was here" in order to make sure that they were going to be talking about the same incident. As soon as he asked the question, appellant responded by stating that he did know and confessing to the murder. After that point, Montano merely listened and took notes. When appellant finished, Montano wrote out a statement in English while appellant was being processed. After appellant returned, Montano went over the written statement with appellant and appellant signed it.

Not all interaction between the police and an arrested person constitutes interrogation for there must be an element of coercion or compulsion in the words communicated by the officers. *Smith v. State,* 60 S.W.3d 885, 889 (Tex. Crim. App. 2001). Thus, the conduct undertaken must reflect an effort to obtain information through some measure of compulsion distinct from any compulsive effect inherent in being placed in custody. *Griffith v. State,* 55 S.W.3d 598, 601 (Tex. Crim. App. 2001); *Smith v. State,* 60

4

S.W.3d at 889. General and routine questions are not interrogation. *Shepherd v. State,* 915 S.W.2d 177, 179 (Tex. App.--Fort Worth 1996, pet. ref'd).

Although appellant's oral confession resulted after being posed a question, one that merely asks if the defendant knows why he is under arrest is not leading or suggestive. *Etheridge v. State,* 903 S.W.2d 1, 15 (Tex. Crim. App. 1994), *cert. denied,* 516 U.S. 920, 116 S.Ct. 314, 133 L.Ed.2d 217 (1995). We also fail to see how it reflects an effort to obtain information by some compulsion distinct from any compulsive effect inherent from custody itself. Further, an answer that goes beyond the scope of the officer's inquiry, *i.e.,* an admission of guilt, is not the result of custodial interrogation. *Id.*

However, even if we assume that the confession did result from custodial interrogation, appellant later signed a written statement after having received warnings. The failure to give *Miranda* warnings before an oral confession, when there has been no coercion or circumstances calculated to undermine the ability to exercise free will, does not so taint the process that a later voluntary and informed statement will not be effective. *Oregon v. Elstad,* 470 U.S. 298, 314, 105 S.Ct. 1285, 1296, 84 L.Ed.2d 222 (1985); *Jones v. State,* 119 S.W.3d 766, 773 (Tex. Crim. App. 2003), *cert. denied,* ___U.S. ___, 124 S.Ct. 2836, 159 L.Ed.2d 270 (2004). The factfinder examines the surrounding circumstances and entire course of police conduct in determining the voluntariness of a subsequent warned statement. *Jones v. State,* 119 S.W.3d at 773.

The form on which the statement was written contained statutory and constitutional admonishments in Spanish. Montano explained the warnings to appellant verbally and then gave them to him to read. Appellant did not appear confused, did not ask for an attorney, and did not ask for the interview to be concluded. Montano also testified that he

5

did not make any promises or threats to appellant. The officer then went through the statement, which was written in English, line by line with appellant in Spanish asking appellant if anything needed to be changed. At one point, appellant did in fact change a word from gurgling to choking. Appellant signed the change and also signed each page of the statement. We find no abuse of discretion on the part of the trial court in admitting the written statement into evidence.

*Voluntariness of Statement*

Appellant argues that the statement is involuntary because it was written in English although he had given it in Spanish, thereby depriving him of due process and equal protection under the law. The fact that an accused does not speak or understand English does not negate the voluntariness of a confession. *Montoya v. State,* 810 S.W.2d 160, 174 (Tex. Crim. App. 1989), *cert. denied,* 502 U.S. 961, 112 S.Ct. 426, 116 L.Ed.2d 446 (1991). The procedure used by Officer Montano has been used in other instances and has not rendered a statement inadmissible. *See id.* at 173-74*; Sanchez v. State,* 760 S.W.2d 731, 732-33 (Tex. App.--Corpus Christi 1988, no pet.); *Samaniego v. State,* 633 S.W. 915, 918 (Tex. App.--El Paso 1982, no pet.). Nothing in the record before us establishes that appellant did not understand the warnings or his statement and did not knowingly and voluntarily waive his rights. *See Hernandez v. State,* 978 S.W.2d 137, 140 (Tex. App.--Austin 1998, pet. ref'd) (holding that even though the defendant was born in Mexico and English was not his primary language, and assuming the officer who read him his *Miranda* warnings in Spanish and English was not fluent in Spanish, the testimony of the officer that the defendant understood and knowingly waived his rights and signed the statement was

6

uncontradicted and so nothing established the waiver was not knowing and voluntary). We therefore overrule issues one and two.

### Issue Three - Inappropriate Comment

In his third issue, appellant argues that he was deprived of due process and equal protection when the trial court made an inappropriate comment on the meaning of an indictment. We overrule the issue.

Just prior to the commencement of voir dire, the trial court made the following remark to the jury panel:

> . . . [T]he Defendant has been indicted by a grand jury, and I'm instructing you that that is not evidence at all. That has nothing to do with the case in this court. It's simply the procedure we go through to see if there is enough reason to go ahead with a trial. I like to think of a grand jury indictment meaning there is a 20 to 30 percent chance the Defendant did what is said in the indictment. It's enough to go ahead with the trial.
>
> Now, if you serve on this jury, I'm going to instruct you when you get seated that you're to listen to the evidence only in deciding the guilt or innocence of the Defendant. You're to listen to just the evidence and the documents that's [sic] introduced in this court. You're not to give reference to any facts you may know about this incident that you've heard elsewhere. You're not to give reference to - - at all to the fact that there is a grand jury indictment. You're not to give any emphasis at all to anything outside of what you hear from that witness stand and what you're presented in the way of documentary testimony and evidence in this courtroom . . . .

It is the contention of appellant that this comment violates provisions of the Penal Code and the Code of Criminal Procedure stating that all persons are presumed innocent and the fact that a person is indicted gives rise to no inference of guilt at his trial. Tex. Code Crim. Proc. Ann. art. 38.03 (Vernon Supp. 2004-05); Tex. Pen. Code Ann. § 2.01 (Vernon 2003). However, no objection was made to this remark and the State argues that the failure to do so waived any error.

7

One is generally obligated to object at trial, state specific grounds for the objection, and secure a ruling on the objection as a condition precedent to the assertion of the complaint on appeal. Tex. R. App. P. 33.1(a)(1). That this requirement generally applies to error arising from the trial court's own conduct is also clear. *See Brewer v. State,* 572 S.W.2d 719, 721 (Tex. Crim. App. 1978) (stating that where no objection is made, remarks and conduct of the court may not be subsequently challenged unless they are fundamentally erroneous); *Williams v. State,* 834 S.W.2d 502, 505 (Tex. App.--Fort Worth 1992, pet. ref'd) (stating that an appellant must object to the trial court's comment to preserve error); *Moore v. State,* 907 S.W.2d 918, 923 (Tex. App.--Houston [1st Dist.] 1995, pet. ref'd) (stating that errors involving the trial court's comment on the weight of the evidence must be asserted at trial to preserve them for appeal).

However, in *Blue v. State,* 41 S.W.3d 129 (Tex. Crim. App. 2000), the court found the assertion of certain rights to be fundamental and subject to assertion for the first time on appeal. In *Blue*, the trial court informed the jury that the defendant had received a plea offer and was contemplating whether to accept it and plead guilty. So too did the trial court state that it would "prefer" that the defendant plead guilty. Though appellant objected to neither comment at trial, he complained of them on appeal. The intermediate court concluded that because no contemporaneous objection was uttered, the error was waived. However, the Court of Criminal Appeals reversed the decision, holding that the error was fundamental and outside the scope of Rule 33.1. *Id.* at 132. In so holding, the court did not state that each instance of misconduct by the trial judge constituted fundamental error nor did it overrule its prior holding in *Brewer*. Rather, four of those voting to reverse deemed the comments to taint the presumption of innocence while the fifth and sixth judges

8

believed that they denied the accused his right to an impartial judge or an impartial tribunal, respectively. *Saldano v. State,* 70 S.W.3d 873, 889 n.72 (Tex. Crim. App. 2002).

While the scope of *Blue* is far from certain, a statement to the jury panel that the mere fact of an indictment means there is a 20-30% chance the defendant is guilty would appear to fall within its parameters in tainting the presumption of innocence. We therefore find that it was not necessary for appellant to complain at trial to preserve error on appeal. Further, because the comment tainted the presumption of innocence, the error was of constitutional dimension. *See Blue v. State,* 41 S.W.3d at 132.

The only error categorically immune from harm analysis is federal constitutional error labeled as "structural" by the United States Supreme Court. *High v. State,* 964 S.W.2d 637, 638 (Tex. Crim. App. 1998); *Cain v. State,* 947 S.W.2d 262, 264 (Tex. Crim. App. 1997); *Chavez v. State,* 34 S.W.3d 692, 696-97 (Tex. App.--Amarillo 2000), *rev'd on other grounds,* 91 S.W.3d 797 (Tex. Crim. App. 2002). A structural error affects the framework in which the trial proceeds rather than an error in the trial process itself. *Arizona v. Fulminante,* 499 U.S. 279, 310, 111 S.Ct. 1246, 1265, 113 L.Ed.2d 302 (1991). Structural errors include total deprivation of the right to counsel, an impartial judge, unlawful exclusion from a grand jury of members of the defendant's race, the right to self-representation, and the right to a public trial. *Chavez v. State,* 34 S.W.3d at 697. A violation of the presumption of innocence has generally been analyzed for harm. *See Scott v. State,* 80 S.W.3d 306, 309 (Tex. App.--Fort Worth 2002, no pet.); *Mendoza v. State,* 1 S.W.3d 829, 830-31 (Tex. App.--Corpus Christi 1999, pet. ref'd).

Although the presumption of innocence is a constitutional right, appellant only challenges the violation of state statutes providing for the presumption. We conduct a

harmless error analysis of constitutional error by reversing unless we determine beyond a reasonable doubt that the error did not contribute to the conviction while we review all other error to determine if a substantial right has been affected. Tex. R. App. P. 44.2(a) and (b). However, we find the error harmless under either analysis in this particular case.

Immediately after making the contested comment, the trial court informed the venire panel it should not give consideration to the fact there was a grand jury indictment. The charge also included an instruction to the jury that a grand jury indictment is not evidence of guilt and could not be considered in determining guilt. Additionally, it contained an instruction that all persons are presumed innocent, which presumption alone is sufficient to acquit the defendant. Further, appellant gave a statement in which he confessed to the murder. Under these circumstances, we find beyond a reasonable doubt that the error did not contribute to the conviction.

### Issue Four - Decision to Testify

Appellant contends in his fourth issue that the trial court improperly advised him against testifying at trial thereby depriving him of due process and equal protection. We overrule the issue.

After appellant's counsel informed the court that he wished to testify against her advice, the court held the following discussion with appellant:

THE COURT: I strongly advise you not to testify in this case.

THE DEFENDANT: Uh-huh.

THE COURT: For one thing, and you may already know this, I admitted your confession into evidence and the jury has heard it.

THE DEFENDANT: Uh-huh.

10

THE COURT: I may have committed legal error in doing that. And an appellate court, two levels of appellate courts in Texas will look at that ruling very closely to see if I made an error in letting it into evidence. If you testify, that takes away any error on my part. Do you understand that?

* * *

THE DEFENDANT: Yes, sir. Yes, sir.

THE COURT: If I have been wrong, legally in letting that into evidence, then if you testify no appellate court will then look at the error.

THE DEFENDANT: Yeah.

THE COURT: So, essentially, all of the evidence against you is the confession.

THE DEFENDANT: Yeah.

THE COURT: If the appellate courts say that it was wrong to let it in, you become a free man.

* * *

THE COURT: You become a free man. If you testify, they will never look at the confession's admissibility. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: Do you still want to testify?

THE DEFENDANT: This is my problem. May I speak?

THE COURT: Yes.

THE DEFENDANT: It doesn't feel right to me for this - - for this case, for me to wait five, six years so that this case is reopened, because just as they can - - the proof right now, the evidence that they have after some time they can invalidate it. The testimony that I say, the true testimony that I say from my heart can be invalidated, too. This jury could say, why didn't you speak? Because you were guilty. Yeah.

THE COURT: Let me answer him on this. I'm going - - in a little while I'm going to instruct the jury if you don't testify that they are not to consider the fact that you did not testify. Nevertheless, it will be against the law for them to - - to talk about you not testifying.

11

THE DEFENDANT: Okay.

THE COURT: Do you understand that?

* * *

THE DEFENDANT: Yes.

THE COURT: I'm going to tell them that in a little while, if you do not testify. And it's my opinion that they will respect that instruction from me.

THE DEFENDANT: Okay. If you promise me that, then I'll try to find out - - I'll try to figure out how I can clear this up.

More than anything, for the deceased, for the family of the deceased. Why this person really lost his life. Yeah.

* * *

THE COURT: In return for me instructing the jury that they cannot talk about you not testifying, you're not going to testify. Is that correct?

THE DEFENDANT: That is correct.

THE COURT: Okay. We're going to do that.

THE DEFENDANT: Okay.

[THE STATE]: Your Honor, just based on uh - - on my impression, and I know the State really doesn't have a position in this. However, the fact that he has changed his mind, I'm wondering if it would be prudent to take a short recess, five or ten minutes to allow him time to consider whether this is a voluntary decision. And like I said, I know it's not the State's position, but uh - - I would be concerned on appeal whether this is truly his decision or not.

THE COURT: That's not a bad idea. We have the time to do that. I think in all fairness, we ought to do that. Let me tell him what I'm going to do.

* * *

THE COURT: Mr. Molina, we're going to take a break or recess for about 15 minutes here.

THE DEFENDANT: Okay.

THE COURT: To let you be very, very sure that that's what you want to do now. Okay?

THE DEFENDANT: Okay. That's fine.

THE COURT: So you go think about this, and then we'll talk about it again
In 15 minutes. Okay?

THE DEFENDANT: Okay.

\*　　\*　　\*

THE COURT: Okay. Mr. Molina, have you had a chance to think it over?

THE DEFENDANT: Yes, sir.

THE COURT: And it's still your decision not to testify?

THE DEFENDANT: Yes, I will not testify.

Appellant argues that the court's reference to its ruling on the admission of his confession was "an inappropriate inducement not to testify" by suggesting that silence is the "best course to pursue in order to overturn the case." A defendant has the right to testify in his own behalf and when it is made clear to the trial court that a defendant wishes to exercise that right, the trial court errs in refusing to allow the testimony. *Hebert v. State,* 836 S.W.2d 252, 255 (Tex. App.--Houston [1st Dist.] 1992, pet. ref'd). While trial counsel may offer advice on whether a defendant should testify, the ultimate decision is made by the defendant. *Id.*

In this instance, we perceive the trial court's comments to be no more than what appellant may well have been advised by his own counsel. Further, the record reveals that appellant's apprehension in not testifying was his fear that the jury would hold that fact against him. Once he was informed by the court that the jury would receive an instruction not to hold his failure to testify against him, he stated he would relinquish that right. Moreover, he was given additional time to consult with his attorney and reaffirm that

13

decision. Nothing in the record indicates the trial court's refusal to allow appellant to testify or that his waiver of that right was not knowing and voluntary. We find no reversible error.

### Issue Five - Batson Challenge

Appellant contends in his final issue that the trial court erred in denying his *Batson*[4] challenge.[5] We overrule the issue.

*Standard*

After the jury was chosen, appellant complained to the trial court that four of the five prospective Hispanic jurors on the panel were struck by the State. A litigant may not exercise his peremptory challenges in an invidiously discriminatory manner. *Batson v. Kentucky,* 476 U.S. 79, 89, 106 S.Ct. 1712, 1719, 90 L.Ed.2d 69 (1986). The party asserting that discrimination has occurred must establish a prima facie case of the same. *Ford v. State,* 1 S.W.3d 691, 693 (Tex. Crim. App. 1999). Should the movant fulfill that duty, then the party who exercised the strikes must explain why he did so. *Id.* Moreover, the reasons proffered must be facially neutral. *Id.* Unless discriminatory intent is inherent in the State's explanation, the reason offered will be deemed race neutral. *Purkett v. Elem,* 514 U.S. 765, 768, 115 S.Ct. 1769, 1771, 131 L.Ed.2d 834 (1995); *Ford v. State,* 1 S.W.3d 691, 693-94 (Tex. Crim. App. 1999). Once this step has been satisfied, the movant must persuade the court to conclude that his opponent engaged in purposeful discrimination.

---

[4] *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

[5] At the commencement of his brief, appellant states that his fifth issue is whether the "trial court committed fundamental error when it failed to properly make findings as to the appropriateness of the State's reasons for it's [sic] peremptory challenges . . . ." Thus, appellant appears to be arguing that the trial court was required to make specific affirmative findings, and its statement that "I'm going to deny the motion to disqualify this jury on Batson . . . " is insufficient. Appellant cites no authority for this contention, and thus to the extent appellant is raising such an issue on appeal, it is inadequately briefed. *See* Tex. R. App. P. 38.1(h) (requiring an appellate brief to contain appropriate citations to authorities and to the record).

14

*Ford v. State,* 1 S.W.3d at 693.  Because the trial court's decision often turns on credibility, we give great deference to the trial court's decision and will not disturb it unless it is clearly erroneous.  *Herron v. State,* 86 S.W.3d 621, 630 (Tex. Crim. App. 2002); *Mathis v. State,* 67 S.W.3d 918, 924 (Tex. Crim. App. 2002).

*Application of the Standard*

The prosecutor gave an explanation for her strike of each Hispanic juror:  1) the first one was struck because she was a school teacher and, from the prosecutor's experience, school teachers tend to favor rehabilitation rather than punishment, 2) the second was a former prosecutor and a current attorney, and the prosecutor did not want an attorney on her panel who might use his own experience and prejudices rather than follow the court's charge, 3) the third made a comment that everyone was capable of murder and the prosecutor feared the juror would identify with appellant, and 4) the fourth was only temporarily employed, causing the prosecutor to feel she was not stable in the community, and she was fluent in Spanish.

Striking a juror because of his or her occupation and counsel's opinions of the views and attitudes associated with that occupation is a facially neutral explanation.  *Tompkins v. State,* 774 S.W.2d 195, 205 (Tex. Crim. App. 1987), *aff'd,* 490 U.S. 754, 109 S.Ct. 2180, 104 L.Ed.2d 834 (1989); *Brown v. State,* 56 S.W.3d 915, 918 (Tex. App.--Houston [14th Dist.] 2001, no pet.).  The same is true of the lack of employment, *Partida v. State,* 133 S.W.3d 738, 742 (Tex. App.--Corpus Christi 2003, no pet.), instability in one's personal life, *Herron v. State,* 86 S.W.3d at 631, or the possibility that the juror might identify with the appellant.  *Gerber v. State,* 845 S.W.2d 460, 466 (Tex. App.--Houston [1st Dist.] 1993, pet. ref'd).

15

With respect to the second and third jurors struck, appellant did not provide any evidence of a racially motivated strike. Because the reasons given were facially race neutral and appellant made no attempt to rebut those reasons, we will not review those strikes. *See Simpson v. State,* 119 S.W.3d 262, 268 (Tex. Crim. App. 2003), *cert. denied,* ___U.S.___, 124 S.Ct. 2837, 159 L.Ed.2d 270 (2004); *Flores v. State,* 33 S.W.3d 907, 926 (Tex. App.--Houston [14th Dist.] 2000, pet. ref'd).

As to the first and fourth jurors, appellant pointed out the names of two other persons on the panel that were a teacher and a professor respectively who were not struck. Nevertheless, the State had already used all of its peremptory strikes prior to reaching one of those persons, and contended that the other person had given answers that overrode her misgivings about the person being a teacher. As to the juror that was only temporarily employed, appellant pointed out that retired persons were not struck. However, he did not name those persons, and we can perceive a difference in stability between an older person who has worked many years and is currently retired and a person of working age who is not gainfully employed. Further, appellant did not attack the strike of that same person on the basis that she was fluent in Spanish. Therefore, we cannot say that the trial court's ruling was clearly erroneous.

Accordingly, all of appellant's issues are overruled and the judgment of the trial court is affirmed.


John T. Boyd
Senior Justice

Do not publish.

16