Felix Edward CANTU, Appellant,

v.

The STATE of Texas, Appellee.

Nos. 433-90, 434-90.

Court of Criminal Appeals of Texas,
En Banc.

Oct. 16, 1991.

Jose A. Stewart, on appeal only, Dallas, for appellant.

John Vance, Dist. Atty., and Sharon Batjer, Asst. Dist. Atty., Dallas, Robert Huttash, State's Atty., Austin, for the State.

OPINION ON STATE'S PETITIONS FOR
DISCRETIONARY REVIEW

WHITE, Judge.

A jury convicted appellant of two counts of aggravated assault and assessed punishment at confinement for ninety-nine years and a $5,000.00 fine in each case. The Dallas Court of Appeals reversed the conviction and remanded for a new trial, holding that admission of testimony of a Department of Human Services (DHS) investigator as to statements made by appellant was improper and not harmless under Tex. R.App.Pro. 81(b)(2). *Cantu v. State,* 785 S.W.2d 1 (Tex.App.—Dallas 1990). We granted the State's petitions to determine if the intermediate court erroneously decided that the absence of *Miranda*[1] warnings prohibited the admission of appellant's statements through the testimony of the DHS worker.

The Court of Appeals set out the facts, in pertinent part, as follows:

An officer of the Grand Prairie Police Department arrested appellant and charged him with two counts of the offense of indecency with a child. The arrest and charge were based on information obtained from an offense report and affidavits of the complaining witnesses supplied by Dallas County Child

1. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

Welfare. The affidavits stated that appellant had sexually abused M. and A., the youngest daughters of his girlfriend Angie with whom appellant lived. At the time of his arrest, the police officers gave *Miranda* [footnote omitted] warnings to appellant. While in custody at the Dallas County jail, appellant contacted Barbara Anderson, an intake investigator for the DHS who had been referred to the family.

Anderson filed a civil proceeding and received temporary managing conservatorship of the sisters and another child in the family who were then placed with their father. It was also Anderson's job to further investigate the charges against appellant and the family situation for the purpose of protecting the children. As part of this investigation, Anderson interviewed the members of the family. Anderson had attempted unsuccessfully to interview appellant prior to his arrest. When appellant contacted her, Anderson went to the jail to interview him. Francesca Ramos, a DHS worker taking over the case, accompanied Anderson.

Anderson testified that she did not give appellant *Miranda* warnings. During the interview, appellant admitted to Anderson that he had been having sex with M., the sixteen-year-old sister, since she was thirteen years old but stated that M. requested it and willingly participated. He also stated that he had touched A., the twelve-year-old sister over her panties when she was nine years old.

A. testified that appellant put his fingers inside of her vagina when she was nine years old. She stated that this continued three or four times a week until she was ten years old. M. testified that appellant had sex with her when she was twelve years old. She stated that appellant continued to have sexual intercourse with her once a week until she was fourteen years old excluding a period of about eighteen months when appellant left the house.

Francesca Ramos testified that Angie harassed her daughters in an attempt to make them drop the charges against appellant. She further stated that Angie had been supportive of appellant and not of her daughters in counseling and throughout the proceedings.

The medical examiner testified that A.'s hymen was completely disrupted, indicating penetration far enough into the vaginal cavity to stretch the hymen and cause it to tear. M.'s hymen was totally disputed, indicating full vaginal penetration, probably more than twenty-five or thirty times.

*Cantu, supra* at 1–2.

The Court of Appeals relied upon *Cates v. State*, 776 S.W.2d 170 (Tex.Cr.App.1989). In that case we distinguished *Paez v. State*, 681 S.W.2d 34 (Tex.Cr.App.1984), by pointing out that the Department of Human Resources (DHR) worker in *Paez* was not functioning in her criminal investigative capacity nor was she acting as one whose business was to ferret out criminal child abuse to then report it to the appropriate police authorities. Rather, she was visiting the defendant in the hospital to determine the well-being of defendant's children. She was tending to a client, not acting as an agent of law enforcement as that term was used in *McCrory v. State*, 643 S.W.2d 725 (Tex.Cr.App.1982). Thus *Paez'* admissions of child abuse to the DHR worker were not the result of custodial interrogation, even though at the time of the admissions Paez was in custody at the hospital charged with the murder of her husband.

*McCrory* did not involve employees of any social service agency but, rather, a polygraph operator who examined the defendant at the behest of the police. The examiner admitted that he used psychological techniques to obtain a confession and that he encouraged the defendant to confess that he had killed the victim. At that time the defendant had not been placed under arrest, although he was the "best" suspect they had. Police officers observed the polygraph examination through a one-way mirror. The polygraph examination resulted in a confession which was later used to convict the defendant. While all

the officers involved stated that the defendant was not in custody prior to or after the giving of the oral confession, we held that:

> "Circumstances distinguish this case from one in which a general investigation into an unsolved crime is shown, [citations omitted]; neither do we have statements made during a general on the scene investigatory process, [citation omitted]; nor is this a case in which the appellant was affirmatively informed that he was not under arrest or, in fact, permitted to leave the company of the officers to go about his business [citations omitted]."

*Id.* at 733–734. Since the confession was obtained through a process that the officers knew was reasonably likely to evoke an incriminating response, we reversed the judgment, implicitly holding the confession was the result of custodial interrogation.

In *Cates* we noted that *Paez* was grounded on the fact that the investigator was not functioning in her investigative capacity while the *Cates* investigator, although not acting at the behest or as a surrogate for another more traditional law enforcement agency, was "operating as an agent of law enforcement in the State of Texas." *Cates,* 776 S.W.2d at 173. Just as in the case at bar, the defendant was in jail on a charge of injury to a child. In *Cates* we wrote, "Vatsis [the investigator] was paid by the State of Texas for the express purpose of discovering, and investigating allegations of child abuse, and turning her findings over to the proper authority responsible for the prosecution of the child abuse offender." *Ibid.* Contrary to *Cates* Anderson was conducting a routine interview to assist her in solving the abuse problem within the family unit.

The State argues that *Cates* is inappropriate since appellant requested Anderson's presence at the jail and volunteered his statements. They rely on *Walker v. State,* 470 S.W.2d 669 (Tex.Cr.App.1971), wherein we wrote:

> Further, we are of the opinion that Miranda would have no application for several reasons. Although appellant was in custody, the statements were not made in response to custodial interrogation or questioning. They were volunteered statements. In Miranda the court stated that "[v]olunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today."

*Id.* at 671.

The record in this case reveals that appellant called Anderson, who unsuccessfully had tried to locate him earlier, and told her that he wanted to confess and tell his side of the story. She had never spoken with appellant prior to that time, and had already turned over control of the case to the ongoing caseworker, Ramos. Anderson and Ramos then went to the Dallas County Jail, where Anderson spoke with appellant over a telephone while separated from him by a glass partition. Since appellant had earlier told Anderson that he wished to confess, she took a confession form with her. After appellant orally told her what had happened he agreed to make a written statement. He wrote out the statement that was introduced against him in court. Anderson denied making promises of any sort to induce the statement, and it is undisputed that she gave no warnings prior to talking with appellant. Anderson considered the taking of this statement to be a matter of routine.

Appellant testified outside the presence of the jury with regard to the events leading to the giving of the confession, disputing certain aspects of Anderson's testimony. Appellant admitted calling Anderson and setting up the interview, but stated he did so because he was aware that Anderson had attempted to contact him. After initially telling her that there, "wasn't nothing to talk about," he finally agreed to talk with the investigators, "[b]ecause she said if I pleaded guilty to the charges that she offered me probation and counseling, plus she said that she wanted to take the kids away from Angie or get her into trouble." When asked why he confessed, appellant stated, "Because she said if I admitted to these charges that she would give me probation and counseling. And I ain't got no money for no lawyer and I ain't got no

money to make no $25,000 bond." He agreed that *Miranda* warnings were not given. Appellant denied that he indicated a desire to confess to Anderson over the phone. On redirect Anderson denied promising probation to appellant, but did admit that she told appellant she was there to help him.

■ At a suppression hearing the trial judge is the sole judge of the credibility of the witnesses and of the weight to be given the testimony. *Meek v. State*, 790 S.W.2d 618, 620 (Tex.Cr.App.1990). The judge may believe or disbelieve any or all of any witness' testimony. *Meek, Id.; Cannon v. State*, 691 S.W.2d 664, 673 (Tex.Cr.App. 1985), cert. denied, 474 U.S. 1110, 106 S.Ct. 897, 88 L.Ed.2d 931 (1986). Those findings should not be disturbed absent a clear abuse of discretion. *Meek, supra; Dancy v. State*, 728 S.W.2d 772, 777 (Tex.Cr.App. 1987), cert. denied, 484 U.S. 975, 108 S.Ct. 485, 98 L.Ed.2d 484 (1987).

■ In this case the trial court admitted the statement over appellant's objections that such was the product of coercive techniques such as a promise of a benefit. This constituted an implicit finding that appellant had not been coerced or intimidated into confessing. The court also explicitly found that Anderson was not acting either as an agency of law enforcement or pursuant to police practices. These findings are supported by the record, and we are bound to accept such. *Meek*, 790 S.W.2d at 621.

The judgment of the Court of Appeals is reversed and the cause remanded to that court for consideration of appellant's remaining points of error.

CLINTON, MILLER and BENAVIDES, JJ., concur in the result.

BAIRD and MALONEY, JJ., dissent.