Opinion issued January 6, 2005
     













In The
Court of Appeals
For The
First District of Texas




NO. 01-03-00910-CR
NO. 01-03-00911-CR
NO. 01-03-00912-CR




THEODORE FLORES, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 248th District Court
Harris County, Texas
Trial Court Cause Nos. 939103, 939102, 939101






O P I N I O N

          In three indictments, appellant, Theodore Flores, was charged with felon in
possession of a firearm, possession of marihuana of more than five but less than 50
pounds, and possession with intent to deliver cocaine weighing more than four grams
and less than 200 grams.


 Appellant filed a motion to suppress the evidence—the
cocaine, marihuana, and firearm that were the basis of the above listed
indictments—that was seized from his residence. The motion to suppress asserted
that appellant’s constitutional rights were violated because the officers who executed
the search warrant by forcibly entering his residence failed to announce their
presence, or, in the alternative, announced their presence but failed to wait a
sufficient length of time before forcibly entering the house. After conducting an
evidentiary hearing, the trial court overruled appellant’s motion to suppress the
evidence. Appellant then pleaded guilty to each of the three offenses and true to the
punishment enhancement paragraphs. Pursuant to an agreed plea bargain with the
State, appellant was sentenced to 20 years in prison for the felon-in-possession-of-a-firearm, and 30 years in prison for each of the other two offenses. The trial court
certified appellant’s right to appeal the trial court’s ruling on his motion to suppress
evidence. 
          In a single point of error for each appeal, appellant contends that the trial court
erred by denying his motion to suppress evidence in violation of his constitutional
rights to be free from unreasonable searches and seizures.


 We affirm.
BACKGROUND
About a month before February 11, 2003, Deputy Willrich, a peace officer with 
the Harris County Sheriff’s Office for 11 years, who is assigned to the narcotics
division, learned that appellant was selling marihuana and possibly cocaine from his
residence. On February 11, 2003, Deputy Willrich received the assistance of a
confidential informant whom he believed to be credible and reliable because of past
narcotics information obtained from the informant. The informant met appellant at
his residence. Appellant displayed a brick of marihuana to the informant as a sample
of what he had for sale, and appellant then returned the brick of marihuana into his
residence. Appellant told the informant the price for the marihuana and the quantity
that he could deliver. The informant relayed to Deputy Willrich what she or he had
observed at appellant’s residence.
Deputy Willrich presented to a magistrate an affidavit for a search warrant for
appellant’s residence at 11,727 Boxhill in Houston, Harris County, Texas. The
affidavit included the above stated information from the informant. The magistrate
signed the warrant authorizing peace officers to conduct a search of appellant’s
residence. 
The informant warned Deputy Willrich that the officers should be careful
because appellant probably had a gun. The search warrant was silent concerning the
informant’s warning. The officers did not request and did not receive authorization
from the magistrate to forcibly enter appellant’s residence without first announcing
their entry. 
On the evening of February 11, 2003, peace officers with the Harris County
Sheriff’s Department met together about a mile from appellant’s residence to discuss
their strategy for the execution of the search warrant. When the officers arrived at 
appellant’s residence, the officers formed a straight line of six people, one in front of
the other, to execute the warrant. The person closest to the front door of the residence
was Deputy Houston, who held the Moby, which is the battering ram for forcible
entry into a residence. The second person in line was Deputy Cook, and the third
person in line was Deputy Murr.


 Both Deputy Cook and Deputy Murr are peace
officers with over ten years’ experience with the Harris County Sheriff’s Department. 
The last person in the line was Deputy Willrich. 
Although neither Deputy Murr or Deputy Cook recalled seeing any motion
sensor on the porch, Deputy Willrich testified that he saw “some type of security
device at the front door and a . . . motion-type detector.” Deputy Willrich stated that
he did not know about the motion sensor until the officers arrived at appellant’s house
to execute the search warrant. Deputy Willrich explained that, in his experience,
suspects place motion detectors on the front of the house so that they can have time
to “get their weapons and get ready to defend themselves.” Deputy Willrich
explained that he feared for his safety and the safety of the other officers because of
the warning that appellant had a firearm, the knowledge, based on his training and
experience, that appellant would most likely try to protect his narcotics, and the
presence of the motion sensor. 
Before entering the house, Deputy Cook knocked on the door to the residence. 
Deputy Cook testified that he “banged” on the door, waited a couple of seconds,
“banged” on the door again, and when no one responded to the knocks at the door,
the Moby was used to enter the door forcibly.


 Deputy Cook also stated that he heard
an unidentified officer announce, “Sheriff’s Department.” Neither Deputy Murr nor
Deputy Wullrich recalled seeing or hearing the knocks to the door, nor hearing any
announcement prior to their entry into the house. Appellant’s wife testified that she
never heard any announcements or any knocks to the door. The record shows that ten
to 12 seconds passed from the time the officers approached the porch of the residence
to the time of the forcible entry. 
An alarm sounded when the officers entered the house. According to
appellant’s wife, she heard the house alarm sound when the officers entered into her
house just as she and appellant were going to bed. She said that she and appellant
arose from bed to find many people in the house shining flashlights and talking
loudly. 
Only four witnesses testified at the motion to suppress hearing: Deputy
Willrich, Deputy Cook, Deputy Murr, and appellant’s wife. The motion to suppress
sought to have the trial court suppress the following evidence seized by the officers
during the search of appellant’s residence: about 15 pounds of marihuana, about one
pound of cocaine, a firearm, and $3,355 in cash. After the trial court denied
appellant’s motion to suppress, the court made oral findings of fact on the record as
follows: (1) the three officers are credible, (2) the testimony concerning the
informant’s warning that appellant probably had a gun is credible, (3) the testimony
that the officers had a “specific concern” that “there was a weapon in the house and
a danger to the officers who were going into the house” is credible, (4) “there was a
knock and announce, and a knock and then the door was forced down within two to
three seconds.” See State v. Groves, 837 S.W.2d 103, 106 n. 5 (Tex. Crim. App.
1992) (holding oral findings of fact can be considered as findings of fact). 
In his sole point of error, appellant contends that the trial court erred by
overruling his motion to suppress. Appellant contends that the officers failed to
announce their presence prior to forcibly entering into his residence, and that no
circumstances justified a forcible “no knock” unannounced entry. In the alternative,
appellant contends that, if the officers knocked on the door and announced their
presence, they waited an insufficient length of time before resorting to forcible entry.


 
We conclude that the circumstances here warranted an unannounced entry into
appellant’s residence, and, thus hold that the trial court properly denied appellant’s
motion to suppress.
Motion to Suppress Standard of Review
          We review a trial court’s ruling on a motion to suppress for abuse of discretion,
and we review the record of the hearing on the motion in the light most favorable to
the trial court’s ruling. Balentine v. State, 71 S.W.3d 763, 768 (Tex. Crim. App.
2002); Villarreal v. State, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996); Rivera v.
State, 808 S.W.2d 80, 96 (Tex. Crim. App. 1991). Ruling on a motion to suppress
lies within the sound discretion of the trial court. Villarreal, 935 S.W.2d at 138. 
          At the hearing on the motion, the trial court is the sole judge of the credibility
of the witnesses and decides the weight to give their testimony. Id.; Romero v. State,
800 S.W.2d 539, 543 (Tex. Crim. App. 1990). We must sustain the trial court’s
ruling if it is reasonably supported by the record and is correct on any theory of law
applicable to the case. Villarreal, 935 S.W.2d at 138; see Romero, 800 S.W.2d at
543. 
          When the trial court does not file findings of fact concerning its ruling on a
motion to suppress, we assume that the court made implicit findings that support its
ruling, provided those implied findings are supported by the record. See Maxwell v.
State, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002). When the trial court does file
findings of fact with its ruling on a motion to suppress, an appellate court does not
engage in its own factual review, but determines only whether the record supports the
trial court’s fact findings. Romero, 800 S.W.2d at 543. Unless the trial court abused
its discretion by making a finding not supported by the record, we will defer to the
trial court’s fact findings and not disturb the findings on appeal. Cantu v. State, 817
S.W.2d 74, 77 (Tex. Crim. App. 1991). On appellate review, we address only the
question whether the trial court properly applied the law to the facts. Romero, 800
S.W.3d at 543. 
Fourth Amendment Announcement Requirement
          The Fourth Amendment guarantees that people shall be free from unreasonable
searches and seizures. U.S. Const. amend. IV. The knock-and-announce
requirement forms a part of the Fourth Amendment’s reasonableness inquiry. Wilson
v. Arkansas, 514 U.S. 927, 934, 115 S. Ct. 1914, 1918 (1995). Police officers
entering a dwelling generally must announce their intent to search before entering
closed premises. See id., 514 U.S. at 934, 115 S. Ct. at 1918.
          The knock and announce requirement, however, is obviated under certain
circumstances. Officers need not announce their intent to search before entry when
officers “have a reasonable suspicion that knocking and announcing their presence,
under the particular circumstances, would be dangerous or futile, or . . . would inhibit
the effective investigation of the crime by, for example, allowing the destruction of
evidence.” United States v. Banks, 540 U.S. 31, 36, 124 S. Ct. 521, 525 (2003)
(citing Richards v. Wisconsin, 520 U.S. 385, 387-88, 117 S. Ct. 1416, 1418 (1997)). 
Officers are not required to knock and announce their presence before the entry either
(1) when a magistrate authorizes the “no knock” entry, or (2) when, as here, the
circumstances support a reasonable suspicion of exigency when the officers arrive at
the door, although no magistrate has authorized the unannounced entry. See id., 540
U.S. at 36-37, 124 S. Ct. at 525. 
          In determining whether the circumstances support a reasonable suspicion of
exigency to justify an unannounced entry, we must examine the totality of the
circumstances. See id., 540 U.S. at 36, 124 S. Ct. at 525 (stating “We have treated
reasonableness as a function of the facts of cases so various that no template is likely
to produce sounder results than examining the totality of circumstances in a given
case; it is too hard to invent categories without giving short shrift to details that turn
out to be important in a given instance, and without inflating marginal ones.”). The
reasonable suspicion burden of proof to justify an unannounced entry is not high, but
it requires that officers have specific and articulable facts that demonstrate a danger
to the officer. See Richards, 520 U.S. at 394-95, 117 S. Ct. at 1421-22 (stating “The
burden of showing a reasonable articulable suspicion of danger to make a no-knock
entry is “not high, but the police should be required to make it whenever the
reasonableness of a no-knock entry is challenged.”). The reasonable suspicion
standard is lower than the probable cause standard. United States v. Arvizu, 534 U.S.
266, 273, 122 S. Ct. 744, 750 (2002). 
          In determining whether reasonable suspicion exists, we look at the facts known
to the officers in the events leading up to the entry into the residence and view those
events from the standpoint of an objectively reasonable police officer. Ornelas v.
United States, 517 U.S. 690, 696, 116 S. Ct. 1657, 1661-62 (1996) (stating “The
principle components of a determination of reasonable suspicion . . . will be the
events which occurred leading up to the . . . search, and then the decision whether
these historical facts, viewed from the standpoint of an objectively reasonable police
officer, amount to reasonable suspicion . . .”). In determining whether the officer
acted reasonably, due weight must be given, not to his inchoate and unparticularized
suspicion or hunch, but to the specific and reasonable inferences which he is entitled
to draw from the facts in light of his experience. Terry v. Ohio, 392 U.S. 1, 27, 88 S.
Ct. 1868, 1883 (1968). Analysis
          Appellant contends that the informant’s warning was insufficient because the
informant was not sufficiently reliable or credible, and because the informant had
insufficient information because the informant did not actually see appellant possess
a gun and did not actually hear appellant threaten the officers. We conclude that the
informant’s warning was sufficient to constitute reasonable suspicion that appellant
was probably armed and dangerous. In Terry v. Ohio, the Court stated, “The officer
need not be absolutely certain that the individual is armed; the issue is whether a
reasonably prudent man in the circumstances would be warranted in the belief that his
safety or that of others was in danger.” Id. Reasonable suspicion thus can exist
without actual knowledge or observation of a gun, as long as the officer reasonably
believed that his safety or that of others was in danger under the circumstances.


 See
id. 
          The officers executing the search warrant knew that (1) appellant probably
possessed a firearm, and (2) the officers should be careful of appellant. The
informant’s warning was specific to appellant, and not a global statement that drug
dealers generally possess firearms. The informant’s warning did not state that
appellant might possibly have a firearm, but instead that appellant probably was
armed. Perhaps more importantly, the informant warned the officers to be careful of
appellant, a statement that would reasonably lead a person to believe that appellant
was dangerous. The officers here were acting on more than a mere hunch that
appellant was dangerous and more than a mere suspicion that he might be armed
because he was a drug dealer. The officers acted on information specific to appellant
from an informant whom they believed was reliable and credible.


 We cannot
conclude that a reasonably objective officer should not have feared for his safety
under these circumstances.
          Although the officers were not told details about the warning, such as whether
appellant had made specific threats against the officers, committed violent acts in the
past, whether the informant had actually seen appellant in possession of a firearm, or
why the informant believed appellant was probably armed, the officers knew that the
informant was credible, reliable, and trustworthy based on their prior contacts with
the informant.


 It was therefore reasonable for the officers to heed the informant’s
warning by believing that appellant was probably armed and dangerous requiring that
they “be careful” in their approach to his residence.In addition to the information from the informant, Deputy Willrich testified that
the porch to appellant’s house had a motion sensor that caused a light on the porch
to turn on when the officers arrived there.


 An objectively reasonable peace officer
could become more concerned for his safety upon finding such a motion sensor at the
house of a person believed to be probably armed and dangerous. See Patterson v.
State, 138 S.W.3d 643, 648 (Tex. App.—Dallas 2004, no pet.) (holding weapons in
house and surveillance equipment sufficient for unannounced entry); see Klepper v.
State, No. 05-02-01283-CR, 2003 WL 22663508, at *2 (Tex. App.—Dallas 2003, pet.
ref’d) (same). 
          We hold that the officers had a reasonable suspicion that knocking and
announcing their presence would be dangerous under the particular circumstances—a
credible and reliable informant’s warning for officers to be careful because appellant
probably had a gun, and the presence of a motion sensor on the porch. See Richards,
520 U.S. at 387-88, 117 S. Ct. at 1418; Stokes v. State, 978 S.W.2d 674, 675-77
(Tex. App.—Eastland 1998, pet. ref’d) (holding that forcible entry into residence two
seconds after announcement at door was reasonable under circumstances that officers
had information from reliable informant that guns were in residence); Collins v. State,
Nos. 03-02-00263-CR, 03-02-00264-CR, 2002 WL 31718039, at *3 (Tex.
App.—Austin 2002, no pet.) (holding that unannounced forcible entry reasonable
under circumstances that informant saw marihuana and guns in residence within 72
hours of issuance of search warrant); Patterson, 138 S.W.3d at 648; Klepper v. State,
2003 WL 22663508, at *2. Because the officers had specific and articulable facts that
demonstrated a danger to the officers, the officers met the reasonable suspicion
burden of proof, which is not high. See Richards, 520 U.S. at 394-95, 117 S. Ct. at
1421-22.
 
 
 
Conclusion
          We affirm the judgments of the trial court.
 
 
 
                                                             Elsa Alcala
                                                             Justice

Panel consists of Justices Nuchia, Alcala, and Higley.
Publish. Tex. R. App. P. 47.2(b).