Affirmed and Memorandum Opinion filed April 26, 2007








Affirmed and Memorandum Opinion filed April 26, 2007.

 

 

In The

 

Fourteenth Court of
Appeals

_______________

 

NO. 14-05-01140-CR

_______________

 

ERNEST JOSEPH FONTENOT, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

                                                                                                                                               


On Appeal from the 337th District Court

Harris County, Texas

Trial Court Cause No. 1017374

                                                                                                                                               


 

M E M O R A N D U M   O P I N I O N








Appellant
Ernest Joseph Fontenot appeals his conviction for aggravated robbery, asserting
that the trial court erred in (1) allowing the State to make an opening
statement during the punishment phase of his trial, (2) admitting evidence
obtained from a warrantless search of his hotel room, and (3) overruling his
objection to an allegedly impermissibly suggestive pretrial identification
process.  Because there is no statutory preclusion of opening statements during
the punishment phase, we hold the trial court did not err in permitting the
State to make such a statement.  We further hold that the trial court did not
abuse its discretion by overruling appellant=s evidentiary objection.  Finally, we
hold that appellant has not demonstrated that the in-court identification of
him by an extraneous offense witness was in any way tainted by an allegedly
impermissibly suggestive pretrial identification procedure.  Thus, we affirm
the judgment of the trial court. 

I.  Factual and Procedural Background

Appellant
has not challenged the legal or factual sufficiency of the evidence, we
therefore discuss the facts only briefly here and throughout the opinion as
necessary to address appellant=s issues.

Around
11:00 p.m. on January 27, 2005, appellant accosted the complainant, a male Rice
University graduate student, with a gun outside the complainant=s apartment, demanding the
complainant=s money.  He then ordered the complainant to remove his clothing, but,
after discovering the complainant lived alone, ordered him to put his clothes
back on.  Appellant followed the complainant into his apartment, ordered him to
crawl into his bedroom, and again ordered him to remove his clothes.  After
binding the complainant=s hands and feet, appellant began rummaging around his
apartment.[1]  At some
point thereafter, appellant returned and released the complainant.  Appellant
then sexually assaulted the complainant, after which he rebound the complainant=s hands and feet.  After threatening
to kill the complainant if he moved and telling him he would be back shortly,
appellant left.  The complainant remained still for about ten to fifteen
minutes, but then realized appellant was not coming back and managed to free
himself from the binding.  He got dressed and quickly went to a nearby
apartment to call the police.  After an investigation, appellant was arrested
in February 2005.








During
his trial, appellant sought to suppress certain evidence obtained by police
through a warrantless search of a hotel room he occupied.  He argued that he
did not consent to this search.  After a hearing conducted outside the presence
of the jury, the trial court found that appellant had consented to the search
and admitted this evidence.  A jury found appellant guilty of aggravated
robbery and, after hearing extensive evidence regarding extraneous offenses and
finding two enhancement paragraphs true, sentenced him to life in prison.

II.  Issues Presented for Review

Appellant
presents three issues for our review.  First, he complains that the trial court
improperly allowed the State to make an opening statement during the punishment
phase of trial.  Second, he contends that the trial court erroneously admitted
evidence obtained from appellant=s hotel room because the State failed
to present sufficient evidence that his consent was freely and voluntarily
given.  Finally, appellant asserts that the trial court erred in overruling his
objection to an impermissibly suggestive pre-trial identification procedure.

III.  Analysis

A.        Opening
Statements During Punishment Phase

In his
first issue, appellant argues that the trial court erred in permitting the
State to make an opening statement during the punishment phase of trial because
such statements are permitted only during the guilt/innocence phase of trial.[2]








Although
article 36.01 of the Texas Code of Criminal Procedure specifically provides for
opening statements and sets forth the order of proceedings for the
guilt/innocence portion of trial, that article does not apply to the punishment
phase.  See Penry v. State, 903 S.W.2d 715, 760 (Tex. Crim. App. 1995)
(per curiam) (holding that the trial court did not err in denying the appellant=s request to make a punishment phase
opening statement because the State neither requested nor made an opening
statement at his re-trial on punishment).  On the other hand, article 37.07,
which establishes procedures for the punishment phase,  is silent regarding
opening statements.  See Tex.
Code Crim. Proc. Ann. art. 37.07 (Vernon Supp. 2005); cf. Penry,
903 S.W.2d at 760 (noting article 37.071=s silence about opening statements).[3] 
Moreover, nothing in Penry indicates that the State is prohibited from
presenting an opening statement at the punishment phase.  Finally, appellant
has not cited, and we have not found, any case holding that the State is
prohibited from presenting an opening statement during the punishment phase of
trial[4] when the same
opportunity is provided to the defendant.[5]









Here,
the trial court afforded both the State and appellant the opportunity to
present opening statements.  Because article 37.07 does not prohibit such
statements at punishment and both parties had the opportunity to present them,
we hold the trial court did not err in permitting the parties an opportunity to
do so in this case.  Thus, we overrule appellant=s first issue.

B.        Voluntariness
of Consent

In his
second issue, appellant contends that he did not consent to the search of his
hotel room where the inculpatory evidence was found.  Thus, he asserts that the
trial court erred in admitting this evidence over his objection.  

We
review a trial court=s ruling on a motion to suppress for abuse of discretion. Villarreal
v. State, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996) (en banc).  At a
suppression hearing, the trial judge is the sole judge of the credibility of
the witnesses and of the weight to be given to their testimony.  Cantu v.
State, 817 S.W.2d 74, 77 (Tex. Crim. App. 1991) (en banc).  The judge may
believe or disbelieve any or all of the witnesses=s testimony.  Id.  If the
trial court=s fact findings are supported by the record, we may not disturb them
unless the trial court clearly abused its discretion.  Id. 








In this
case, the trial court held a hearing outside the presence of the jury to
determine the voluntariness of appellant=s consent to search his hotel room. 
At this hearing, Sergeant Frank Quinn and retired officer Julie Hardin from the
Houston Police Department testified for the State.[6] 
Quinn testified that he read appellant his rights and that he was present when
appellant signed a written consent form allowing officers to search his storage
unit at a storage facility.  According to Quinn, appellant voluntarily
consented orally to the search of his hotel room, but subsequently refused to
sign another written consent form.  Quinn testified that no promises or threats
were made to obtain appellant=s consent to the searches.  Hardin testified that she also
advised appellant of his rights before questioning him and obtaining his
consent to search.  According to Hardin, appellant voluntarily consented orally
to the search of his hotel room after he had already signed the written consent
for the search of his storage unit.  She testified that he was unwilling to
sign any more papers.  Hardin also stated that appellant was not threatened
before he consented to the searches.  

During
cross-examination of the officers, appellant pointed out some apparent
inconsistencies between the officers= live testimony and the notes made in
Hardin=s offense report.  Both officers,
however, described a similar sequence of events surrounding appellant=s consent to search his hotel room. 
Finally, appellant testified that he signed the written consent form authorizing
the search of his storage unit, but that he did not consent to the search of
his hotel room.

In
determining that the evidence obtained from the searches was not inadmissible
based on a lack of consent, the trial court found that Aconsent was freely and voluntarily
given without any threats, without any promises, without any coercions [sic]
after a warning given by two officers.@ Thus, the trial found the officers= testimony more credible than
appellant=s testimony.  The trial court was authorized to make this determination
and these factual findings are supported by clear and convincing evidence in
the record.  Further, appellant does not explain how the trial court=s decision to admit this evidence is
arbitrary or unreasonable.  Under these circumstances, we cannot conclude that
the trial court abused its discretion.[7]  We overrule
appellant=s second issue.

C.        Pretrial
Identification Procedure








In his
third issue, appellant complains that the trial court improperly overruled his
objection to an allegedly impermissibly suggestive pre-trial identification
procedure.  AIn considering the scope of due process rights afforded a defendant with
regard to the admission of identification evidence, the United States Supreme
Court has held that a pretrial identification procedure may be so suggestive
and conducive to mistaken identification that subsequent use of that
identification at trial would deny the accused due process of law.@  Conner v. State, 67 S.W.3d
192, 200 (Tex. Crim. App. 2001).  It is therefore not the pretrial
identification procedure itself that denies an accused due process of law, but
rather the subsequent use of an in-court identification obtained through an
impermissibly suggestive pretrial procedure that implicates an accused=s rights.  See id. 

For this
reason, determining the admissibility of an in-court identification involves a
two-step analysis: (1) whether the pretrial  identification procedure was
impermissibly suggestive, and (2) whether that suggestive procedure gave rise
to a very substantial likelihood of an irreparable in-court misidentification. Id.
This analysis requires an examination of the totality of the circumstances
surrounding the identification.  Id.  But Aif the totality of the circumstances
reveals no substantial likelihood of misidentification despite a suggestive
pretrial procedure, subsequent identification testimony will be deemed >reliable,= reliability [being] the linchpin in
determining the admissibility of identification testimony.@  Ibarra v. State, 11 S.W.3d
189, 195 (Tex. Crim. App. 1999) (citations omitted, internal quotations
omitted).








During
the punishment phase of appellant=s trial, the trial court conducted an
identification hearing outside the presence of the jury, where two extraneous
offense witnesses testified regarding their respective pretrial identifications
of appellant as the attacker in two extraneous offenses.  Appellant complains
that the pretrial identification process described by one of these witnesses 
was unduly suggestive because he was the only individual to participate in two
separate lineups conducted for that witness.  This witness stated that,
although she identified appellant and was Afairly sure@ he was her assailant after viewing a
video lineup, she requested a live lineup so that she could better hear his
voice.  She identified appellant in the live lineup.  According to this
witness, at the live lineup, appellant was the only person similar to those she
had seen in the video lineup.  But she also stated that she saw appellant=s face during the commission of the
offense at her house, and that her identification of appellant was based on her
memory from the date of the offense.  At the conclusion of her testimony at the
identification hearing, appellant objected to this process, stating, A I would say that it=s unduly suggestive because it=s B because the only person that was in
the two lineups that was the same was the defendant.  That=s it.@  The trial court overruled this
objection.

We first
note that, on appeal, appellant does not contend that this witness=s  in-court identification of him was
tainted by an allegedly impermissibly suggestive pretrial identification
process, nor does he provide any argument or authority to that effect.  Without
such a showing, appellant provides no basis for reversal even if the pretrial
identification procedure were impermissibly suggestive.  See Barley v. State,
906 S.W.2d 27, 34 (Tex. Crim. App. 1995) (indicating that an appellant bears
the burden to establish that an impermissibly suggestive identification
procedure gave rise to a substantial likelihood of misidentification); see
also Conner, 67 S.W.3d at 200 (observing that it is the subsequent in-court
identification of an accused that implicates due process rights).  Moreover,
even where a pretrial identification procedure is impermissibly suggestive, the
in‑court testimony of an identification witness will still be admissible
as long as the record clearly reveals that the witness=s prior observation of the accused
was sufficient to serve as an independent origin for the in‑court
identification.  Jackson v. State, 657 S.W.2d 123, 130 (Tex. Crim. App.
1983) (en banc).  This witness testified that she (1) saw appellant=s face during the assault and (2) was
basing her identification of appellant on her memory from the offense.  Thus,
our record establishes that she had an independent foundation for her identification
of appellant, and nothing in the record reflects (nor does appellant contend)
that her in-court identification of appellant as her attacker was in any way
based on the pretrial identification procedures used.








In sum,
appellant has not provided this court with any basis from which we may conclude
that this witness=s in-court identification was unreliable due to an
impermissibly suggestive pretrial identification procedure.  See Ibarra,
11 S.W.3d at 195.  Accordingly, we overrule appellant=s third issue.

Having
overruled each of appellant=s issues, we affirm the judgment of the trial court.

 

 

/s/        Eva M. Guzman

Justice

 

 

Judgment rendered and Memorandum
Opinion filed April 26, 2007.

Panel consists of Justices Frost,
Seymore, and Guzman.

Do Not Publish C TEX.
R. App. P. 47.2(b)









[1]  Sometime
during the course of events that transpired that night, appellant stole several
items from the complainant=s apartment,
including numerous video games, a video game console, various DVDs, a cell
phone, and the complainant=s debit card.





[2]  Appellant
objected to the State making an=s opening
statement at the commencement of the punishment phase, but the trial court
overruled his objection and permitted the State to make an opening statement
limited to what the State expected the evidence during the punishment phase to
show the jury.





[3]  See also
Garcia v. State, No. 71417, 2003 WL
22669744, at *1 (Tex. Crim. App. Nov. 12, 2003) (not designated for
publication) (holding that a trial court did not err in permitting the State to
make an opening statement during the punishment phase of a capital case and
noting that articles 37.07 (at issue here), 37.071 (at issue in Penry),
and 37.0711 (at issue in Garcia) are all similarly silent on the issue
of opening statements at punishment), cert. denied, 543 U.S. 855, 125
S.Ct. 267,160 L.Ed. 2d 91(2004).  





[4]  The cases
appellant cites in support of his argument have no application here because
those cases  involve the trial court=s
denial of a defendant=s request to present an opening statement.  See
Penry, 903 S.W.2d at 760; Love v. State, 69 S.W.3d 678, 680 (Tex.
App.CTexarkana 2002, pet. ref=d).  But cf. Garcia, 2003 WL 22669744, at *1 (indicating that
opening statements are permissible during the punishment phase of a capital
case because the statutory procedures relating to the punishment phase do not
prohibit them).





[5]  When the trial
court asked appellant if he wanted to make an opening statement, appellant=s attorney replied, ASince I don=t believe we have a right to make an opening
statement, I will not make an opening statement, Your Honor.@  Thus, this case does not present a situation where
the defendant was denied the opportunity to give an opening statement after the
State had done so.  Cf. Robles v. State, 104 S.W.3d 649,652 (Tex.
App.CHouston [1st Dist.] 2003, no pet.) (holding it was
error to deny the defense an opportunity to give an opening statement after the
State=s opening argument); Arriaga v. State, 804
S.W.2d 271, 272S734 (Tex. App.CSan
Antonio 1991, pet. ref=d) (same); Twine v. State, 929 S.W.2d 685, 686S87 (Tex. App.CEastland
1996), pet. dism=d,
improvidently granted, 970 S.W.2d 18
(Tex. Crim. App. 1998) (same).  





[6]  Hardin was the
officer who actually questioned appellant and obtained his consent.  Quinn was
one of the officers involved in the subsequent search who was present when
appellant consented.





[7]  Moreover,
appellant does not provide any argument or authority in his brief regarding how
the trial court=s admission of this evidence caused him any harm.  See
Tex. R. App. P. 44.2.