Affirmed and Opinion filed February
10, 2011.

 

In
The

Fourteenth
Court of Appeals



NO. 14-09-00977-CR



The State of
Texas, Appellant 

v.

Jason A. Smith,
Appellee 



On Appeal from
the 240th District Court

Fort Bend County, Texas

Trial Court
Cause No. 44730



 

OPINION 

Appellant, the State of Texas, challenges an adverse
pretrial ruling suppressing and excluding expert witness testimony pertaining
to dog-scent lineup identification evidence.  Finding no error in the trial
court’s exclusion of this evidence, we affirm.

Factual and Procedural
Background

A grand jury indicted appellee Jason Alexander Smith for
the 2003 offense of murder by intentionally and knowingly shooting the
complainant, Daryl Hayes, with a firearm.  Upon discovery of the complainant’s dead
body inside a vehicle, officers used sterile gauze pads to collect scent samples
from various locations inside the vehicle, including the backseat and the front
passenger seat.  Scent samples also were collected from a white t-shirt found on
or near the trunk of the vehicle, a set of keys and a “toggle,” and a Glock
pistol found inside the vehicle.  In the investigation that ensued, officers
recovered a Smith & Wesson .357 Magnum.  Officers believed that the weapon,
which they recovered in 2005, was the firearm used in the commission of the
charged offense, which occurred in 2003.  

On July 7, 2005, Fort Bend County Sheriff’s Deputy Keith
Pikett conducted a human-scent lineup with three of his bloodhounds.  Six
individuals, all black males, including Smith stood in positions 1-6.  They
stood about 25 to 30 feet apart.[1] 
As part of the lineup, Deputy Pikett “scented”[2]
the dogs with the scent samples taken from the vehicle.  Two of the dogs were
scented using the scent sample taken from the backseat.  When Quincy, the first
of Deputy Pikett’s bloodhounds, was scented with this sample, Quincy indicated
the scent belonged to the person standing in position 6.  The second
bloodhound, James Bond, when scented with the same sample, indicated that the
scent belonged to Smith, who stood in position 1.  Only one of the bloodhounds was
scented with a sample taken from the t-shirt found in the vehicle, and that dog
indicated that the scent belonged to Smith.  Each of the three bloodhounds indicated
that the scent on the .357 firearm belonged to Smith.  When Quincy was scented
again with the sample taken from the vehicle’s backseat, Quincy indicated the
scent belonged to Smith (position 1); James Bond was not scented again with the
sample from the backseat.  When the dogs were scented with other samples taken
from the vehicle, the dogs indicated that there was “no trail” and did not
identify anyone in the lineup as being associated with the scent.

Smith filed a pre-trial motion for discovery,
production, and a Kelly[3]
hearing on the scent evidence.  At the hearing on Smith’s motion, conducted on September
12, 2007, Deputy Pikett testified that he was a certified peace officer and had
been a canine handler with the Fort Bend Sheriff’s Department for nine-and-a-half
years.  Deputy Pikett described his experience in working with bloodhounds and
his dogs’ experience in detecting scents, as well as the scent lineup he
conducted in July 2005, a procedure which occurred with Smith’s legal counsel present.
 The trial court denied Smith’s motion to suppress the scent-lineup evidence.

Smith filed a motion to exclude all testimony and
evidence in connection with the scent lineup.  At a hearing on April 2, 2009,
the trial court addressed Smith’s motion and found the scent-lineup evidence
admissible and relevant.  Several months later, on September 9, 2009, the trial
court held a non-evidentiary hearing on Smith’s motion to reconsider the ruling
on the scent-lineup evidence.  In this motion, Smith alleged the following:  

·       
Deputy Pikett has committed perjury related to his education in
two other court proceedings; 

·       
Deputy Pikett’s scent discrimination lineups have been proven
wrong in other cases; 

·       
Deputy Pikett has been ruled unreliable by another trial court of
the same jurisdiction; and 

·       
Dog-scent evidence has been proven wrong and unreliable in other
jurisdictions in the country.  

 

In support of his motion, Smith
offered a bench memorandum with exhibits attached, but the trial court
indicated that it was considering only legal arguments at the hearing and no
testimony or other evidence was presented.  The trial court orally granted Smith’s
motion for reconsideration and ruled that the scent-lineup evidence would be
excluded, effectively setting aside the court’s previous ruling of September
12, 2007.  

In response to the State’s request, the trial court
entered the following findings of fact from the September 12, 2007 hearing:

1.      Keith
Pikett testified that there was a possible cross-contamination of the scents in
the lineup in question;

2.      Keith
Pikett did not run a “blind” scent lineup in the instant case without the
defendant;

3.      Keith
Pikett does not keep complete records on the scent lineups that his dogs have
participated in;

4.      Keith
Pikett’s training records regarding the dog’s training are incomplete;

5.      Keith
Pikett’s failure to maintain records makes it difficult to determine accuracy or
error rates;

6.      Keith
Pikett’s “records” were not subject to peer review;

7.      Keith
Pikett failed to follow up on the dispositions of cases in which his dogs participated;

8.      Keith
Pikett failed to perform validation testing on his dogs during scent lineups;

9.      Keith
Pikett testified that no one is reviewing his work;

10. The bloodhound dogs in question
are not certified and there is no recognized industry standard on bloodhounds
and no certification program for bloodhounds;

11. While the idea that bloodhounds
can track and identify scents is accepted as valid, there is no clear1y
accepted method for conducting scent lineups;

12. No literature was offered by the
State in support of the manner in which the scent lineup in question was
conducted;

13. No independent evidence was
presented by the State regarding the potential rate of error;

14. No evidence was presented by the
State regarding the availability of other experts to test and evaluate the
manner in which the scent lineup in question was conducted;

15. The defense presented evidence
that the dogs in question could be intentionally or unintentionally influenced
by the dog handler because the manner in which the scent lineup in question was
conducted;

16. There was no showing that the
scent lineup results could be duplicated by others following the same methods.

 

The trial court offered the
following conclusion of law:  “Keith Pikett’s methods in this case were not
shown to be sufficiently reliable to allow his testimony to be admitted, and
therefore Keith Pikett will not be allowed to testify as an expert.”

The trial court entered an order on October 23, 2009,
excluding the testimony of Deputy Pikett.  The State filed a motion to
reconsider the ruling and provided documents for support.  The trial court
denied the State’s motion.  The State now appeals, asserting that the trial
court erred in excluding Deputy Pikett’s testimony regarding the scent lineup.

Analysis

We review a trial court’s ruling on the admissibility
of scientific evidence under an abuse-of-discretion standard.  Weatherred v.
State, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000).  The trial court is the
sole judge of the weight and credibility of the evidence presented at the
suppression hearing.  See Winston v. State, 78 S.W.3d 522, 525 (Tex.
App.—Houston [14th Dist.] 2002, pet. ref’d) (citing Weatherred, 15
S.W.3d at 542).  As a reviewing court, we consider the trial court’s ruling in
light of the evidence presented at the time of the trial court’s ruling.[4]  See Weatherred,
15 S.W.3d at 542.  A reviewing court must uphold the trial court’s
ruling if it was within the zone of reasonable disagreement.  Id.  We
consider whether the trial court acted without reference to guiding rules or
principles or whether the trial court acted arbitrarily or unreasonably in so
ruling.  Montgomery v. State, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990)
(op. on reh’g).

                        Did
the trial court err in excluding the canine handler’s testimony?

            In
its first issue, the State asserts the trial court erred in excluding Deputy
Pikett’s testimony without reference to the rules and principles set forth in
this court’s opinion in Winston v. State, in which a prior panel concluded
the trial court did not abuse its discretion in admitting testimony of the same
canine handler regarding an accused’s identification during a dog-scent lineup.
 See 78 S.W.3d at 529.

            Texas Rule of
Evidence 702, entitled “Testimony by Experts,” governs the admission of expert
testimony, and provides:

If scientific,
technical or other specialized knowledge will assist the trier of fact to
understand the evidence or to determine a fact in issue, a witness qualified as
an expert by knowledge, skill, experience, training, or education may testify
thereto in the form of an opinion or otherwise.  

Tex. R. Evid. 702; see Winston, 78 S.W.3d at 525.  A
proponent of scientific evidence must show by clear and convincing proof that
the proffered evidence is sufficiently relevant and reliable to assist a
factfinder in determining a fact issue or understanding the evidence.  See Weatherred,
15 S.W.3d at 542.  

            In assessing the
reliability of scientific evidence, the Texas Court of Criminal Appeals has set
forth a three-prong reliability test and identified seven non-exclusive factors
for consideration.[5] 
Kelly v. State, 824 S.W.2d 568, 573 (Tex. Crim. App. 1992); see
Winston, 78 S.W.3d at 525.  But, because, as in this case, interpretation
of a dog’s reaction to a scent lineup is based on training and experience, and
not scientific principles, we apply the less rigorous test set forth in the Nenno
case.[6] 
See Winston, 78 S.W.3d at 526 (applying criteria set forth in Nenno
v. State, 970 S.W.2d 549, 560–61 (Tex. Crim. App. 1998)).  When addressing
fields of expertise that are grounded in experience and training rather than
scientific methods, the less-rigorous standard for assessing reliability
applies.  Applying this standard, we consider whether (1) the field of
expertise is a legitimate one, (2) the subject matter of the expert, in his testimony,
is within the scope of the field, and (3) the expert’s testimony properly
relies upon or utilizes the principles involved in the field.  See Nenno,
970 S.W.2d at 561; Winston, 78 S.W.3d at 526 (applying standard to scent
lineups). 

            In Winston,
this court concluded that the scent lineups were a legitimate field of
expertise, stating “there is little distinction between a scent lineup and a
situation where a dog is required to track an individual’s scent.”  Winston,
78 S.W.3d at 526.  This position was rejected in Winfrey v. State, in
which the Texas Court of Criminal Appeals noted there are “significant
scientific differences among the various uses of scenting.”  Winfrey,
323 S.W.3d at 883 (quoting Andrew E. Taslitz, Does the Cold Nose Know?  The
Unscientific Myth of Dog Scenting, 42 Hastings
L.J. 15, 42 (1990)).  For purposes of this case, even were we to presume
without deciding that the field is a legitimate area of expertise, the State
has failed to carry its burden in establishing the reliability and relevancy of
Deputy Pickett’s testimony.  See Weatherred, 15 S.W.3d at 542.

As a proponent of the expert testimony, the State had
the burden of proving by clear and convincing evidence that Deputy Pikett’s
testimony was relevant and reliable.  See id.  Although the State
attempted to carry that burden, the State offered only Deputy Pikett’s
testimony and no other evidence.  See id. at 542–43 & n.6.  Our
scrutiny of Deputy Pikett’s testimony reveals that although he claims his dogs
are reliable and accurate in identifying scents, he has failed to produce or
cite any evidence supporting his claims.  See id. at 542–43 (involving
expert who claimed to have carried out extensive research on reliability of
eyewitness identification, yet failed to produce or name any studies,
researchers, or writings in question).  Deputy Pikett referred to his records
for support, and these records were available to Smith’s legal counsel.  But Deputy
Pikett’s testimony reveals that though he maintains some records for training
and practice lineups, these records are incomplete as are his records verifying
the outcome of cases in which his dogs have identified suspects and the records
of the dogs’ success rates.  Given the evidence before the trial court at the
September 12, 2007 hearing, the trial judge reasonably could have concluded
that the State had failed to carry its burden of showing that the proffered
expert testimony was reliable.  Therefore, the trial court did not abuse its
discretion in excluding Deputy Pikett’s testimony on Smith’s motion to reconsider
the court’s previous ruling.[7] 
Accordingly, we overrule the State’s first issue.

Did the trial
court err in treating the canine handler’s testimony as scientific evidence?

In its second issue, the State asserts that the trial
court erred in holding the September 2007 evidentiary hearing under the less-rigorous
standard in Nenno and then improperly excluded Deputy Pikett’s testimony
under the Kelly factors.  For support, the State points to the
trial court’s findings of fact as showing that the trial court improperly held
the State to the higher standard set forth in Kelly.  According to the
State, the facts underlying Deputy Pikett’s testimony are materially
indistinguishable from the facts referred to in Winston, in which Deputy
Pikett’s expert testimony was admitted.

The State refers to findings 6, 9, 12, and 14 as
relating to the absence of peer review and claims that this deficiency affects
the weight, and not admissibility, of evidence.  In Winston, the two
recognized experts in the field of bloodhound training witnessed Deputy Pikett
in action and approved his techniques and recommended him to others.  See
Winston, 78 S.W.3d at 527.  Furthermore, in Winston, unlike the case
under review, Deputy Pikett testified that in conducting a scent lineup the
procedure he used in the scent-pad lineup was consistent with the procedure
approved by the National Police Bloodhound Association manual.  See id.
at 528.  As such, the evidence of peer review was present in Winston.  See
generally id. at 527, 528.  Consequently, Winston is
factually distinguishable from the case under review.

The State points to findings of fact 5, 7, and 13 as relating
to lack of evidence of an error rate, and claims that error rate is not an
appropriate measure of reliability.  The State cites no legal authority for
this assertion.  See Tex. R. App.
P. 38.1(i).  Moreover, this
court in Winston considered the dogs’ accuracy and success in determining
whether Deputy Pikett’s testimony was reliable.  See Winston, 78 S.W.3d
at 528 (noting one example of the dogs’ success, referring to testimony that
Deputy Pikett’s dogs have “never misidentified a scent in a scent lineup,” and
indicating that “Deputy Pikett provided documentation detailing the success of
every trail and scent lineup involving his dogs”).

The State refers to findings 10, 11, 14, and 16 as
relating to “clearly accepted methods,” certification, and duplication, and
asserts that these factors are not appropriate measures of reliability.  Although
there is no requirement of certification for an expert’s testimony to be deemed
reliable under Nenno, Deputy Pikett testified that the industry standard
is based on the dogs’ performance and records indicating success rates; unlike
the facts in Winston, in the case under review Deputy Pikett had no such
records of success rates to verify the reliability of his testimony nor did he
have records of his procedures or order of the dogs in the lineup at issue.  See
id. at 528 (indicating that Deputy Pikett provided documentation of his success). 
Also, unlike the facts in Winston, the record in this case shows that Deputy
Pikett testified that he used multiple dogs and ran multiple tests, contrary to
expert recommendations and accepted methods.  See id. (involving
approval of Deputy Pikett’s method for scent-pad lineup by the National Police
Bloodhound Association manual).  Smith’s expert witness explained how using
multiple dogs can create an unwanted pattern for the dogs or trainer.  

The State’s contentions regarding this second issue lack
merit because, as explained, Winston is factually distinguishable.  Moreover,
the Texas Court of Criminal Appeals has not foreclosed on application of hard
science methods of validation, such as assessing the potential rate of error or
subjecting a theory to peer review, for testing the reliability of fields of
expertise outside of hard science in appropriate cases.  See Nenno, 970
S.W.2d at 561 & n.9; see, e.g., Winston, 78 S.W.3d at 527–29
(involving some peer review via approval of techniques by other experts and
evidence of dogs’ success in identification).  Therefore, we overrule the
State’s second issue.

Did the trial
court err by determining evidentiary weight and credibility when it excluded
the canine handler’s testimony?

In its third issue, the State asserts that in
excluding Deputy Pikett’s testimony, the trial court improperly invaded the
province of the jury.  The State alleges that as evidenced by the trial court’s
findings of fact, the trial court resolved issues of credibility instead of
resolving whether the evidence was reliable.

When a trial court makes explicit findings of fact in
ruling on a motion to suppress, a reviewing court views the evidence in the
light most favorable to the trial court’s ruling and determines whether the evidence,
when viewed in that light, supports the fact findings.  State v. Kelly,
204 S.W.3d 808, 818 (Tex. Crim. App. 2006).  At a suppression hearing, the
trial court is the sole judge of the weight and credibility of the evidence
presented.  See Winston, 78 S.W.3d at 525.  The reviewing court reviews
the trial court’s legal ruling de novo unless the explicit fact findings, as
supported by the record, are also dispositive of the legal ruling.  Kelly,
204 S.W.3d at 818.  Unless the trial court abused its discretion by making a
finding that is not supported by the record, we will defer to the trial court’s
fact findings and not disturb those findings on appeal.  See Cantu v. State,
817 S.W.2d 74, 77 (Tex. Crim. App. 1991).

Issues of credibility and reliability are not the
same.  See Vela v. State, 209 S.W.3d 128, 134 (Tex. Crim. App. 2006).  A
jury should evaluate a witness’s credibility, but unreliable evidence should
never reach the jury.  See id. at 135–36.  As a gatekeeper, the trial
court is tasked with determining how the reliability of particular testimony is
to be assessed.  See id. at 134.  Although an inquiry as to reliability
is flexible, the proponent of the evidence must establish some foundation for
the reliability of an expert’s opinion.  Id.  Reliability centers on
principles and methodology and not on the expert’s conclusions generated by
those principles or methodology.  See id. at 136 (citing Daubert v.
Merell Dow Pharmaceuticals, Inc., 509 U.S. 759, 595, 113 S. Ct.
2786, 125 L. Ed. 2d 469 (1993)).  A trial court should not admit an expert’s
opinion if that opinion is connected to existing data only by the expert’s own
assertions.  Id.  A trial court properly may conclude that there
is too large of an analytical gap between the data and the expert’s proffered
opinion.  Id.  Proper deference should be given to a trial court’s
ruling.  Id.

The State claims that the following findings of fact
are not supported by the record:  finding 1, involving possible
cross-contamination; findings 3 and 4, which relate to incomplete records; and
finding 8, relating to validation testing.

The record reflects that when Deputy Pikett testified
about his dog Quincy’s identification of the person in position 6 as the scent Quincy
detected from the scent sample taken from the backseat of the vehicle, Deputy
Pikett expressly attributed that misidentification to an issue of
cross-contamination when Deputy Pikett learned Smith and the person in position
6 were allowed to commingle at the jail before arriving for the lineup.  Deputy
Pikett surmised that the Smith could have transferred his scent to the other
man by shaking hands, giving a high five, bumping chests, or similar physical
contact.  The record supports the trial court’s finding on this issue.

The State contends that in making its finding that
there was no “blind” scent lineup conducted without Smith, the trial court
disregarded evidence that Deputy Pikett conducted a subsequent scent lineup
with Smith’s co-defendant and without Smith, in which the dogs indicated “no
trail” and did not identify anyone in the lineup as leaving a scent on the .357
firearm.  Deputy Pikett indicated that he keeps the process simple and does not
conduct a “double blind” lineup.  Furthermore, the subsequent lineup with the
co-defendant differed from Smith’s lineup in a number of ways:  it occurred a
couple of weeks later; it involved only two of the dogs, and Deputy Pikett did
not identify which dogs participated in the subsequent lineup; Deputy Pikett scented
the dogs with only the .357 firearm, but did not use the scent pads collected
from the vehicle, which caused Quincy’s purported misidentification; Deputy
Pikett could not recall whether the dogs were scented off of the firearm itself
or a scent pad collected from the firearm; and there is no indication that the
person in position 6, who was purportedly misidentified by Quincy in Smith’s
lineup, was present in the subsequent lineup with the co-defendant.  Given
Quincy’s misidentification in the lineup at issue, Deputy Pikett’s subsequent
lineup without Smith, conducted weeks later, could not confirm whether his dogs
were accurate in their identification of Smith.  

The State also asserts that Deputy Pikett could not
have influenced his dogs in their identification of Smith because he did not
know in which position Smith stood; yet Deputy Pikett’s testimony reflected
that he helped collect scent samples from the vehicle in 2003, had access to
evidence and Smith’s case file, set up the lineup, and conducted the lineup.  The
record supports the trial court’s finding.

The trial court’s findings regarding Deputy Pikett’s
records are likewise supported by Deputy Pikett’s testimony that his daily training
logs, records of practice lineups, records or other evidence verifying the
outcome of cases in which his dogs have identified suspects, and records of the
dogs’ success rates were not complete.  

The State asserts that the record shows Deputy Pikett
conducted validation testing, including in Smith’s lineup, contrary to the
trial court’s finding 8.  According to the record, Deputy Pikett testified that
he did not run a blind test to validate the accuracy of dogs’ original
identification of Smith.  Deputy Pikett cited his science background to “keep it
simple, stupid, and get out of all that crap,” when others tried to complicate
the process.  The record supports the trial court’s finding.

The State argues alternatively that the trial court’s
findings 6, 9, 14, and 16, regarding peer review were not supported by the
record.  As discussed above, Deputy Pikett testified that his records were not
complete as to daily training logs, records of practice lineups, records or
other evidence verifying the outcome of cases, and records of success rates;
therefore, these records were not complete or subject to peer review.  Deputy
Pikett referred to keeping some outcomes in his head, which were not available
for peer review.  According to the record, Deputy Pikett offered conflicting
testimony about whether his methods in this case have been reviewed or approved
by others.  Likewise, according to the record, the State did not offer any
other evidence in support of Deputy Pikett’s testimony or that the lineup
results could be duplicated—especially in light of Deputy Pikett’s testimony
that he uses multiple dogs or multiple “runs” contrary to what others do or
that others are “making the process incredibly complex” when he is “trying to
make it incredibly simple.”  The record supports the trial court’s findings.

Finally, the State refers to finding 15 pertaining to
Smith’s expert testimony about possible handler influence during the scent
lineup and asserts that this finding affected the weight to be given the
evidence, but not the admissibility of the evidence.  Arguably, this evidence could
have affected the trial court’s decision in determining the reliability of the
methods and principles used by Deputy Pikett, especially when the State offered
no other evidence supporting the reliability of Deputy Pikett’s methods. 

The trial court’s findings are supported by the
record.  In excluding Deputy Pikett’s testimony as being unreliable, the trial
court could have concluded that there was too large of an analytical gap
between the data offered and Deputy Pikett’s proffered opinion.  See Vela,
209 S.W.3d at 136.  A trial court should not admit expert testimony that
is connected to existing data only by the expert’s own assertions.  See id.
 Unreliable evidence should not reach the jury.  See id. at 135–36. 
Deferring, as we must, to the trial court’s findings, we conclude the trial
court did not abuse its discretion in excluding Deputy Pikett’s testimony.  We
overrule the State’s third issue.

The trial court’s order is affirmed.

 

                                                                                    

                                                                        /s/        Kem
Thompson Frost

                                                                                    Justice

 

 

 

Panel consists of Justices Frost, Brown, and Christopher.

Publish —
Tex. R. App. P. 47.2(b).









[1]
At oral argument, the parties referred to this configuration as a “wagon-wheel
lineup.”





[2]
According to Deputy Pikett’s testimony at a pre-trial hearing, in his
terminology “to scent” entails opening a sealed plastic bag and allowing a dog
to smell a scent sample contained within the bag to see if the dog detects and
trails the scent or indicates “no trail.”





[3]
Kelly v. State, 824 S.W.2d 568, 573 (Tex. Crim. App. 1992).





[4]
Because the appended materials attached to Smith’s appellate brief are not part
of the appellate record and were not presented to the trial court at the time
of the trial court’s ruling, we do not consider these documents in our review. 
See Ramirez v. State, 104 S.W.3d 549, 551 n.9 (Tex. Crim. App. 2003)
(providing that appellate record cannot be supplemented with evidence not
presented to trial court).  Likewise, because the trial court did not accept
evidence at the September 9, 2009 hearing on Smith’s motion to reconsider, we
do not consider the supporting materials attached to Smith’s bench memorandum. 
See id.





[5]
The three-part reliability test contemplates whether (1) a scientific theory is
valid, (2) application of the theory is valid, and (3) the technique has been
properly applied.  See Kelly v. State, 824 S.W.2d 568, 573 (Tex. Crim.
App. 1992).  Factors affecting a trial court’s determination of reliability
include the following non-exclusive factors:  (1) the extent to which the
underlying scientific theory and technique are accepted as valid by the relevant
scientific community, if such a community can be ascertained, (2) the
qualifications of the expert(s) testifying, (3) the existence of literature
supporting or rejecting the underlying scientific theory and technique, (4) the
potential rate of error of the technique, (5) the availability of other experts
to test and evaluate the technique, (6) the clarity with which the underlying
scientific technique can be explained to the court, and (7) the experience and
skill of the person(s) who applied the technique on the occasion in question.  Id.;
see Winston, 78 S.W.3d at 526 n.2.





[6]
The Texas Court of Criminal Appeals recently held that (1) scent-discrimination
lineups are separate and distinct from dog-scent tracking evidence, and (2)
scent-discrimination lineups, when used alone or as primary evidence, are
legally insufficient to support a conviction.  See Winfrey v. State, 323
S.W.3d 875, 883–84 (Tex. Crim. App.
2010).   In doing so, the Winfrey
court referred to “‘scientific principles underlying dog scenting.’”  See
id. at 882–83 (quoting Andrew E. Taslitz, Does the Cold Nose Know? 
The Unscientific Myth of Dog Scenting, 42 Hastings
L.J. 15, 42 (1990)).  However, as noted by Judge Cochran in her
concurring opinion, the Winfrey court addressed only whether the
evidence was legally sufficient to support the conviction and did not address
the admissibility of dog-scent lineup evidence under either Kelly v. State or
Nenno v. State.  See id. at 885 (Cochran, J., concurring).





[7]
In its fourth issue, the State seeks reversal and argues in the alternative
that it carried the burden of establishing by a preponderance of the evidence
that Deputy Pikett was qualified, citing Kelly, 824 S.W.2d at 573,
apparently for the proposition that the burden of persuasion is unclear for
scientific evidence that is not novel.  We have determined that Deputy Pikett’s
testimony did not satisfy the less-rigorous standard set forth in Nenno
for admitting expert testimony.  Having failed to meet the less-rigorous
standard, Deputy Pickett’s testimony, therefore, would not have satisfied the
criteria set forth in Kelly.  For this reason, we overrule the State’s
fourth issue.  We decline to reverse and remand on these grounds as the State
requests in its reply brief.